CASE 32.—ACTION BY JOHN LUMPKIN AGAINST THE LOUIS-
VILLE & NASHVILLE RAILROAD CO.—January 20,
1910.

## L. & N. R. R. Co. v. Lumpkin

Appeal from Whitley Circuit Court.

W. T. Davis, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

Master and Servant—Injuries to Servant—Contributory Negli-
gence.—Plaintiff, an engineer, went under his engine while it
was standing in the yards to make repairs, and while under
it another train backed down the track toward his engine
when his fireman sounded the danger signal, and plaintiff
got out and the other train backed into the car attached to
his engine, and, after waiting from four to eight minutes when
the other train did not move, plaintiff went back under his
engine, though another employe advised him that it was un-
safe to do that in the yards. The other engine was around
a curve so that plaintiff could not see it. He thought he
saw the smoke of a detached engine going to the round-house,
and saw some trainmen on the other train leave it as was
usual when cars were not to be again moved, but the other
engine had not left, and, after plaintiff went under his engine,
pulled forward and moved his engine, injuring him, the cars of
the other train having automatically coupled with the car at-
tached to plaintiff's train, which he did not know. Plaintiff
did not give the other trainmen notice that he was going under
his engine or investigate to determine whether the train was
connected therewith and the repairs thereto were not urgent,
and could have been made after his engine was pulled away
some distance from the other train. Held, that plaintiff was
negligent in going under the engine under the circumstances,
so that he could not recover for injuries sustained.

BENJAMIN D. WARFIELD, J. W. ALCORN, H. H. TYE and
CHAS W. MOORMAN for appellant.

ROBT. HARDING, R. L. POPE, E. V. PURYEAR, T. Z. MOR-
ROW and GREENE, VANWINKLE & SCHOOLFIELD for appel-
lees.

OPINION OF THE COURT BY JUDGE HOBSON—Revers-
ing.

John Lumpkin was an engineer in the service of
the Louisville & Nashville Railroad Company, having
charge of a switch engine in its yards at Corbin, Ky.
He worked during the day and another engineer took
charge of the engine and ran it at night, coming on
for duty at 6 p. m.   Ten or fifteen minutes before
6 p. m. Lumpkin pulled his engine with a box car
attached to it up to a water crane and stopped there
for two purposes:  First, to take water; and, second,
to repair some of the appliances of the engine which
were out of order, and which it was his duty to repair
before he turned it over to the night man.   For the
purpose of making these repairs, he went under the
engine, while the fireman turned the crane and began
running water into the tank.   While they were thus
engaged the fireman saw a train of 42 cars backing
down on the track on which they were standing.   He
at once blew the whistle as a danger signal.   At this
Lumpkin came out from under the engine, and the
men who were backing the cars stopped them, but
not before the cars had backed against the cars stand-
ing next to the engine, and pushed that and the en-
gine several feet down the track.   Lumpkin and the
fireman stood there for several minutes, waiting for
these cars to move.

In the meantime the night engineer arrived to take
charge of the engine.   But it was not quite 6 p. m.,
and Lumpkin said to him: "There is a minute or two
repairing to be done under the engine," and was

about to go under it again for this purpose.  The
night man said to Lumpkin that he would not go un-
der the engine; that it was unsafe to go under the
engine there in the yard; that a person never knew
when something might run against them.  Lumpkin
replied that it was all over, and again went under
the engine.  While he was under there making the
necessary repairs, the train which had backed against
him pulled up.  When this train had backed against
the car which was attached to his engine, the impact
had automatically set the coupling between them, and,
when the train pulled up, this coupling being set, it
carried with it both the car and Lumpkin's engine,
under which he was then at work.  The result was
that his right arm was cut off, and he brought this
suit to recover for the injury.  A judgment having
been rendered in his favor for $5,000, the railroad
company appeals.

Before going back under the engine to finish the
repairs, Lumpkin had stood by the side of the en-
gine from four to eight minutes.  He saw some em-
ployes on the backing train get down and leave it
as was done when no further movement of the cars
was to be made.  He saw what he thought was the
smoke of a detached engine going to the roundhouse.
He did not know that the train had become coupled to
his box car.  The engine which had backed in this
train was around the curve from him.  He could not
see it.  He did not go around the curve to assure him-
self of what the situation was.  He did not confer with
any of the men on that train to learn what they were
going to do.  He gave them no notice that he was go-
ing under the engine and they knew nothing of his
danger.  He knew that the train had backed against
his car; and he also knew that sometimes when this

was done the coupling would set automatically; but he made no investigation before going under the engine.

The engine stood in a busy yard where trains and cars were constantly moving about, and, when he went under the engine, there was no space between the car attached to the engine and the cars of the train which had run against it. Any backward movement of that train would necessarily move his engine. He had only been saved from injury a few minutes before by getting out from under the engine when the fireman sounded the alarm whistle, before the collision occurred. It is insisted that the men in charge of the backing train were negligent in backing it against Lumpkin's car, and that, when they backed it against his car, there should have been a man on the rear of this train to see whether it had coupled to the car before the train was moved up. It is pretty evident from the proof that the men in charge of the train did not intend to back against Lumpkin's car, or to couple to it, and that there was negligence on their part in backing and coupling to it. But Lumpkin was not hurt then. After he got from under the engine, he knew that the train had backed against the car.

When he then went under the engine, he knew that any backward movement of the train would move his engine, and he did not know when such a movement might take place, for, although as he thought the engine which had put the cars there had left, he could not see around the curve, and he could not tell at what moment another engine might come against these cars. As a matter of fact, the engine which placed the cars there had not left, and the smoke which Lumpkin saw was the smoke of another engine. When he went under his engine, his engine and

car were a part of the train which had backed against them. He could have avoided all danger by moving his engine and car down the track a short distance, and having the men who were with him to watch as before, while he went under the engine to make the necessary repairs. But he did not do this, and went under the engine without taking any precautions for his safety, and without anybody knowing that he was under it except the men who were with him. The train of cars which had backed in was about a quarter of a mile long, and it had simply stood there while the engineer was waiting for the signal to go ahead. The men which Lumpkin saw leave the cars were simply walking away from them temporarily in the discharge of their duties. Cars were constantly moving about in the yards, and no one could tell when cars would be moved, or when they would be sent forward or backward. It was required by the rules that, when work was to be done under cars by any of the men, blue flags were to be put out which would give notice of the danger of moving them.

When Lumpkin went under the engine, he knew that any movement of the engine imperiled his life. He also knew that there could be no backward movement of the train referred to that would not necessarily move his engine back. If that train had backed and had thus injured Lumpkin, it would hardly be maintained that he was not guilty of contributory negligence in going under the engine; for manifestly he did not take any adequate precautions to know what that train was going to do next. The fact that the train went forward instead of backward in no way affects the question of his contributory negligence in going under the engine; for he went under

the engine upon the idea that it was all over, and that no further movement of those cars was to be made. In doing this he took the risk. There was no immediate urgency for the work to be done under the engine. Only a chain on a brake beam had to be adjusted. The engine had been run for several hours as it was; and, if he had moved his engine down the track so that his fireman might warn him of danger as he had done before, he would have discovered at once that the train was coupled to his car.

There was the same necessity for care on his part after he saw the train come against his car, as there was for care on the part of the men in charge of the train. It was the duty of both to exercise ordinary care in the handling of what was in their charge. Lumpkin did not exercise any care to ascertain whether his engine and car were free, and, if he had the right to assume they were free, it is hard to see why the men in charge of the train had not an equal right to assume the same thing. It has long been settled that men who go under trains without notice to the trainmen take the risk. We can not see why this rule should not apply here. Lumpkin knew the cars of the train were against the car that was attached to his engine, and that, so far as any backward movement of that train was concerned, his engine and car were for practical purposes a part of the train. He did not know that the automatic coupling had fastened, but he knew that such couplings were in common use and were liable to fasten. To say that he may recover here would be in fact to hold that a person may go under an engine or cars in a yard like this, without notice to others or taking any precautions for his own safety, and recover for his injury if he is hurt. This we can not do.

We therefore conclude that, on the facts shown by him, the court should have instructed the jury peremptorily to find for the defendant.. This conclusion makes it unnecessary for us to consider the other questions discussed by counsel.

Judgment reversed, and cause remanded for further proceedings consistent herewith.