## Lumpkin v. L. & N. R. R. Co.

(Decided September 29, 1911.)

### Appeal from Whitley Circuit Court.

Railroads—Personal Injury—Instructions.—In an action for damages against a railroad company for personal injuries, evidence examined and held that the trial court properly directed a verdict in favor of defendant.

B. V. PURYEAR, ROBT. HARDING, R. L. POPE, JAS. N. SHARP for appellant.

BENJAMIN D. WARFIELD, H. H. TYE, J. W. ALCORN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is the second appeal of this case. The opinion on the former appeal may be found in 136 Ky., 290, entitled Louisville & Nashville Railroad Company v. John Lumpkin. In that opinion it was held that Lumpkin was guilty of contributory negligence as a matter of law, and that the trial court erred in failing to award the railroad company a peremptory instruction. Upon return of the case a second trial was had, and at the conclusion of

plaintiff's testimony the court directed a verdict in favor of the railroad company. From the judgment based thereon this appeal is prosecuted.

The facts of the case are fully set out in our former opinion. It will, therefore, be necessary only to refer, briefly, to the circumstances of the accident and to give the additional evidence which appellant claims was sufficient to take the case to the jury.

At the time he was injured, Lumpkin was an engineer in the service of the Louisville & Nashville Railroad Company. He was in charge of a switch engine in its yards at Corbin, Kentucky. A few minutes before six o'clock he pulled his engine, with a box car attached to it, up to a water crane and stopped for the purpose of taking water and repairing some appliances of the engine. The fireman turned the crane and began to run water into the tank, while Lumpkin went under the engine to make repairs. While thus engaged a train with about forty-two cars backed down on the track on which they were standing. The fireman blew the whistle as a danger signal. Lumpkin came out from under the engine, and the cars that were backing down the track were stopped, but not until they struck the car standing next to Lumpkin's engine and pushed them and the engine several feet down the track. Lumpkin and the fireman stood there a few minutes waiting for the car to move. In the meantime the night engineer, who was to take Lumpkin's place, arrived. Lumpkin again went under the engine, and while in that position the train pulled up. As the impact of the train, as it moved down the track, had set the automatic coupling, when the train was moved it carried with it both the car and Lumpkin's engine. Lumpkin's arm was cut off. Before going under the engine Lumpkin did not notify the employes on the train of his intention so to do, nor did he take any precautions whatever, for his own safety. We, therefore, held that, in going under the engine without exercising any care for his own safety, he assumed the risk, and was not entitled to recover.

The facts upon the second trial are substantially the same as those upon the first trial, with two exceptions: Upon the second trial there was some evidence to the effect that the engineer in charge of the train that backed down on the track was drunk, and Lumpkin testifies that he saw in the round house a bulletin, addressed to engi-

neers and conductors, to the effect that it was the duty of trainmen, before moving a car or train, to see that it was in condition to be moved.

In our former opinion we recognized the fact that there was negligence on the part of the train employes, and the evidence now before us, to the effect that the engineer was drunk, simply goes to show additional negligence; it has no bearing upon the question of Lumpkin's contributory negligence.

This leaves for our consideration the additional evidence respecting the duty of employes with reference to moving trains or cars. For the purpose of getting the question fairly before us, we state, in Lumpkin's own language, the substance of the bulletin which he claims to have seen in the round house. In his direct examination he states the rule as follows: "Well, when you come to a car to be moved, when any car is to be moved by any crew, the crew moving the car is supposed to know whether the car is in condition to be moved or not." Again, he says: "If I had been going to move this car or this train here, my crew would have went down there and saw whether or not this train was in condition to be moved or not before they would have given me a signal to move it. Q. Then, if that crew's train ran in there to your train, as you have described, it was their duty to investigate the condition of the train before they moved it? (Objection overruled.) A. It certainly was." On cross-examination he stated the rule as follows: "A. The substance of the bulletin was to instruct employes of the company when they came upon a car to be moved by an engine that they must assert themselves whether or not the car was in shape to be moved before they coupled to it." Again, he says: "That bulletin was to instruct employes of the mechanical and transportation department that they must, in case they wished to move a car or cars or engine, they must assert themselves whether or not they were in proper shape to be moved, and that if it be an engine that they must find the engineer and be sure the engine was in shape to be moved." It is upon this rule that Lumpkin claims to have relied, and it is insisted that he was not guilty of contributory negligence in going under the engine, when he had a right to expect that the employes in charge of the train that had become attached to the car in the rear of his engine would observe the rule. Giving the language employed by Lumpkin in

expressing the substance of the rule in question full effect, it is manifest that the rule has no application to the fact of this case, as he says the rule was addressed both to the employes of the mechanical and transportation departments. It is the duty of the mechanical department to see that the cars are in a safe condition to be moved. It is the duty of the transportation department not to move them unless they are in such condition. If any of the appliances about a car are defective, then it should not be moved until such defects are remedied. The rule has no application to a case where the condition of a car is perfect but the car becomes automatically coupled to another with which it comes in contact. The rule referred to did not authorize Lumpkin to go under the engine without taking any precautions for his own safety and rely entirely upon employes of the other train ascertaining his peril by examining the train or any of the cars as to their physical condition, which is admitted to have been all right. It is manifest from Lumpkin's whole testimony that he acted upon the supposition that the train which had become attached to his car and engine was "dead," and would make no further move: but his mistaken belief cannot protect him from the consequences of his own act, when, by the slightest care, he could have ascertained the contrary and have taken the precaution to apprise those in charge of the train that he was under the engine.

Upon the whole case, we fail to see wherein the additional evidence adduced on the second trial has changed the status of appellant's case. We, therefore, conclude that the trial court properly directed a verdict in favor of the railroad company.

Judgment affirmed.