# Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Padgett.

### (Decided March 3, 1915.)

## Appeal from Lincoln Circuit Court.

1. Negligence—Dangerous Substances—Care To Be Exercised in Handling.—It is the duty of persons having in their possession for use in their business, that which, unless carefully handled and cautiously used, is dangerous to others, to exercise such care to see that the dangerous substance or agency is so kept and used as not to inflict injury upon others, as an ordinarily prudent person would be expected to exercise under the same or similar circumstances. And, where a railroad company uses dynamite for blasting purposes in connection with the construction of a concrete abutment, it is charged with the duty of caring for the dynamite supply when not in use, as well as when it is in use.

2. Negligence—Explosives—Proximate Cause.—Where a portion of dynamite became embedded and concealed in pitch in a bucket, and the bucket was afterwards used as a receptacle for burning rags, and the pitch ignited, whereupon the bucket was thrown out near boarding cars occupied by workmen engaged in construction work, and there exploded, injuring one of the members of the crew who was returning to the cars, the proximate cause of his injury was the permitting of the dynamite to get in the bucket, not the act of using the bucket as a receptacle for burning rags, although through the latter act the original act became operative to produce the injuries.

3. Negligence—Consequences That Should Have Been Foreseen.—A wrongdoer is not excused because he could not foresee the particular injury or harm which actually results from his wrongful act.

4. Master and Servant—Master's Liability for Injuries to Servant—Non-delegation of Duty.—The duty of a master to care for a dangerous explosive such as dynamite, cannot be delegated. The servant to whom is entrusted the care of the dynamite acts in the performance of such duty as the vice principal or in the place of the master.

5. Negligence—Contributory Negligence—Instruction On.—An instruction which tells the jury, in substance, that if the plaintiff at the time of receiving his injuries was negligent, and that his negligence contributed to his injuries to such an extent, that but for it he would not have been injured, the jury will find for the defendant, is in the concrete form so often approved by the Court of Appeals that it has been almost universally adopted by the circuit courts of the State as a standard in cases to which the law of contributory negligence is applicable.

6. Appeal—Second Appeal—Opinion On First Conclusive as to Law of the Case On Second Appeal.—Where, following a reversal on ap-

peal, there is a second trial of the case in the circuit court and on such trial that court's rulings substantially conform to the requirements of the opinion of the Court of Appeals; the latter court, being also bound by its former opinion, will, in the event of a second appeal, affirm the judgment.

K. S. ALCORN and JOHN GALVIN for appellants.

ROBERT HARDING, O'REAR & WILLIAMS, GEORGE D. FLOR-ENCE and E. V. PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In this action the appellee, Alvin Padgett, recovered of the appellants, Cincinnati, New Orleans & Texas Pacific Railway Company and L. E. Floyd, in the court below, a verdict and judgment in the sum of $5,000.00 damages for personal injuries received by him while in the service of the railroad company, from the explosion of a stick of dynamite alleged to have been left in a bucket of pitch by the negligence of the appellant, Floyd, the railroad company's foreman in charge of a crew of workmen engaged in the construction of a concrete abutment in the city of Lexington.

On a previous trial of the case appellee recovered a verdict and judgment against appellants for $7,500.00 damages, but on the appeal of the latter the judgment was reversed for error in the instructions. The opinion on that appeal will be found in 158 Ky., page 301. As that opinion contains an elaborate statement of the facts respecting appellee's injuries, only a brief outline of them will be necessary here. The evidence on the last trial does not materially differ from that of the first trial.

Appellee, with other workmen, was in the employ of the appellant railroad company in the summer of 1911 in the work of constructing concrete abutments for a bridge north of the depot in Lexington. There were twenty or thirty men constituting the crew and they were under the control of the appellant Floyd as foreman. A number of these employes, including appellee, slept and ate in the railroad company's "boarding cars," which were kept on a sidetrack near the work. Twenty-five or thirty feet from the place of work was a building known as a "cement house," in which were kept, under lock and key, the tools, cement and dynamite used in constructing the abutments, all, as was the cement house, in charge of Floyd. According to the evidence, includ-

ing Floyd's own testimony, he was especially charged with the duty of keeping a vigilant watch care over the dynamite, because of its explosive and dangerous character. A part of this duty was to superintend the taking of dynamite from the cement house to where it was used in blasting, and of keeping account of the sticks as taken out of and returned to the cement house. It also appears from the evidence that there were several buckets used for dipping water, carrying sand and cement, pitch and tar from the cement house to the place where the work was under way, and in these buckets were also carried the sticks of dynamite from the cement house to the place of work. According to the evidence the appellant Floyd, as foreman, failed to have several sticks of dynamite returned to the cement house, and suffered some of them to become embedded in the pitch in two of the buckets. On one occasion, perhaps three weeks before receiving his injuries, appellee, while using one of these buckets in dipping water, discovered a fuse in the pitch, which he pulled out and threw the bucket in the weeds fifty yards from where the work was being done. On the fourth of July two other employes found and removed from one of the buckets two or three sticks of dynamite which they used for the purpose of making an explosion in celebrating that day. This, however, was not known to appellee, nor was it any part of his duty to handle or use dynamite.

It further appears from the evidence that at the time of receiving his injuries appellee, with a fellow-workman, Daugherty, was returning about eight o'clock at night to the boarding cars for the purpose of retiring. Before they came in sight, however, the appellant Floyd had taken one of the buckets containing pitch from under the car, put some rags in it, set them on fire and put it in one of the boarding cars to drive out the mosquitoes. The bucket contained a stick of dynamite, of which Floyd was informed after he had fired the rags and placed the bucket in the car. Upon receiving this information he threw the bucket from the car to the ground. It fell a few feet from the car and was left there burning. When appellee and Daugherty got near the car in which they expected to retire they saw the burning bucket, and when, according to their testimony, they had gotten within five or six feet of it they were told by Floyd or someone standing near that the burn-

ing bucket contained dynamite; immediately upon the giving of this information, and before appellee had time to reach a place of safety, the dynamite exploded, blowing off his right leg and much of the flesh of the left. Floyd and some of the other employes with him testified that appellee and Daugherty were warned of the presence of the dynamite in the burning bucket when thirty-five feet distant therefrom, but that, instead of heeding the warning, they came on and got within four or five feet of the bucket, when the explosion occurred; and that the warning was given in ample time to have prevented appellee's injuries had it been heeded by him.

It is now contended by the appellants, as on the first appeal: (1) That the trial court should have peremptorily directed a verdict for them; (2) that it erred in instructing the jury. The first contention rests upon the grounds that the evidence failed to show that the appellant Floyd was guilty of negligence or that such negligence was the proximate cause of appellee's injuries, and that the injuries resulted from appellee's own negligence. These several grounds of complaint were on the first appeal held to be lacking in merit, and, as the evidence on both trials was the same, no reason is now perceived for our reaching a different conclusion. In respect to the question of Floyd's negligence we, in the former opinion, said:

"It is the duty of persons who keep in their possession or employ in their business that which, unless carefully guarded and cautiously used, is dangerous to others, to exercise such care to see that the dangerous agency is so kept and used as not to inflict injury upon others as an ordinarily prudent person would be expected to exercise in the use and keeping of such dangerous agency. See Merschel v. L. & N. R. R. Co., 121 Ky., 620, 85 S. W., 710, 27 R., 465; Pittsburg, etc. Ry. Co., v. Shields, 47 Ohio St., 387, 24 N. E., 658, 8 L. R. A., 464, 21 Am. St. Rep., 840; Rush v. Spokane Falls & Nor. R. Co., 23 Wash., 501; 26 Cyc., 1112. Floyd testified that he did not know the dynamite was in the bucket; but he was placed in charge of the dynamite supply, and he was, therefore, charged with the duty of using it with care and caution, as well as with the the duty of observing like care and caution in the custody of the dynamite when it was not in use. As was said in the Shields case, supra (speaking of railroad torpedoes), 'The serv-

ant's custody of them when not in use was as much a part of his employment as was the use of them.' The court is of the opinion, therefore, that the mere presence of this stick or portion of the dynamite imbedded and concealed in the pitch in the bucket in question was some evidence of negligence in the handling of the dynamite supply while not in use; at least sufficient evidence of negligence in that respect to authorize the submission to the jury of the issue as to the exercise of due care.''

In dealing with the question of proximate cause the opinion, after applying to the evidence the principles announced in Watson v. Ky. & Ind. Bridge & Ry. Co., 137 Ky., 619; 21 A. & E. Ency. of Law (2nd Ed.), 490; Louisville Home Tel. Co. v. Gasper, 123 Ky., 128; C. & O. Ry. Co. v. Young's Admr., 146 Ky., 317; Bransom's Admr. v. Labrot, 81 Ky., 638; Addison on Torts, 511; U. S. Natural Gas Co. v. Hicks, 134 Ky., 12; Sherman & Redfield on Negligence (6th Ed.), Section 32, concludes its discussion of that feature of the case as follows:

''But in the case at bar the burning of the rags in the bucket in question did not alone cause appellee's injuries; therefore, it was not a superseding cause. Nor was such act a culpable one, and hence a responsible cause, for it was performed in ignorance of the danger. It cannot be said, therefore, that the negligence of the foreman in caring for the dynamite supply, if such negligence there was, was not the proximate cause of appellee's injuries. * * * That someone might be injured was a foreseeable natural consequence of the original act of permitting this dynamite to get in the bucket. * * * A wrongdoer is not excused because he could not foresee the particular injury or harm which does actually result from his wrongful act. Nor can appellant company escape liability, if negligent, upon the ground that the act of the foreman, Floyd, in burning rags in the bucket and throwing it out of the car, was an act not within the scope of his employment, as appellant company contends. That act operating alone did not cause appellee's injuries. It was merely an intervening, but not superseding or responsible agency through which the original act became operative. Appellant company could only have the custody of the dynamite through the instrumentality of an agent; and the duty of its foreman, Floyd, was to care for the dynamite entrusted to him by the company, when it was not

in use as well as when using it.  That duty was within the scope of his employment, and if he negligently failed to discharge it, and by reason of such failure a portion of the dynamite became imbedded and concealed in the bucket in question, and, as the natural result or consequence of such failure, appellee was injured, he may recover from appellant company as well as from Floyd, for, in the handling and custody of the dynamite supply, the negligence of the foreman is the negligence of the master.  The duty of the master to care for a dangerous agency cannot be delegated so as to relieve the master from responsibility.  *  *  *''

The opinion also disposes of appellant's complaint of the refusal of the trial court to give the peremptory instruction on the ground that appellee's injuries were shown by the evidence to have been caused by his own negligence, or contributory negligence.  As to that matter, there was on the last trial, as on the first, a contrariety of evidence.  As previously stated, according to the testimony of appellee and Daugherty, the warning that was received by the former of the presence of the dynamite in the burning bucket was not given in time to enable him to escape the danger of the explosion; while, according to that of Floyd and one or two other witnesses introduced for appellants, the warning was given in ample time to have enabled appellee to escape such danger.  The contrariety of evidence compelled the submission of that question to the jury.  On this point we, in the former opinion, said:

''If the danger was created by negligence in caring for the dynamite supply, the fact of warning would only be evidential upon the issue of contributory neglect upon the part of appellee.  The giving of a warning, if the danger was created by negligence, would not constitute a direct release from liability for the consequences of such negligence.  The real issue is, whether the defendants failed to exercise such care in the safekeeping of said dynamite as an ordinarily prudent person would be expected to exercise in the handling of dynamite under the same or similar circumstances, and by reason thereof that portion of the dynamite, by the explosion of which plaintiff was injured, was permitted to become imbedded and to remain concealed in the bucket in question; and, if so, whether plaintiff's injury was a natural result of such failure.''

The reversal on the former appeal resulted because the trial court had improperly instructed the jury that it was the duty of defendant company to keep the premises in a reasonably safe condition, and that if after the foreman discovered or knew that the plaintiff was in danger from the burning bucket, he failed to use ordinary care in the exercise of all reasonable means at his command, consistent with his own safety, to warn the plaintiff of his danger, and that by reason of such failure, if any, plaintiff was injured, they should find for him. With respect to the instructions that should be given on another trial we, in the opinion, said:

"The jury should have been instructed, in substance, that it was the duty of the defendant company and defendant Floyd, in keeping the dynamite supply in question, to use ordinary care to keep the same in such place and under such conditions as that those whose duties required or permitted them to be on or about the premises where said dynamite was kept, would be reasonably safe from injury therefrom; and that, if they negligently failed to perform this duty, and as a natural consequence or result of such failure, a portion of said dynamite was exploded and the plaintiff injured thereby, they should find a verdict for him. This, in connection with an instruction on the measure of damages, an instruction on contributory negligence, an instruction defining ordinary care and the usual instruction as to a three-fourths verdict, is all that should have been given."

The above excerpts from the former opinion overrule and effectually dispose of every contention save one urged by appellants for a reversal on the present appeal, and the opinion, as a whole, was on the last trial and is on this appeal the law of the case.

Appellant's final contention is that the trial court erred in instructing the jury as to the law of contributory negligence and in failing to give the instruction on that question offered by them. No reason is apparent for sustaining either of these contentions. The instruction on contributory negligence given by the trial court is substantially expressed in the language and after the concrete form so often approved by this court that it has been almost universally adopted by the circuit courts of the State as a standard in all cases to which the law of contributory negligence is applicable. Hobson,

Blaine & Caldwell's "Instructions," Sections, 436-437; C. & O. Ry. Co. v. Connoly, 136 Ky., 601; C., N. O. & T. P. Ry. Co. v. Silvers, 126 S. W., 120; Ewing & Sons v. Callahan, 32 R., 46; Hummer's Ex'r. v. L. & N. R. Co., 128 Ky., 486; Lumpkin v. L. & N. R. Co., 144 Ky., 621; Cin. Sou. Ry. Co. v. Miller, 10 Ky. Opinions, 515.

The instruction on contributory negligence offered by appellants is not, as claimed by appellee's counsel, open to the objection that it called the attention of the jury to certain selected facts and gave to them undue emphasis. The instruction might with propriety have been given, but its refusal was not error, as it was wholly unnecessary in addition to the one on the same subject given by the court on its own motion.

The proceedings on the last trial seem to have conformed in all particulars to the requirements of the opinion on the former appeal. The record furnishes no cause for disturbing the verdict and the judgment is, therefore, affirmed.