CASE 72.—ACTION BY ELLIOTT CONLEY AGAINST THE
      CHESAPEAKE & OHIO RAILWAY COMPANY.—
      February 10, 1910.

## Chesapeake & Ohio Ry. Co. v. Conley

Appeal from Carter Circuit Court.

J. B. HANNAH, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Pleading—Amendment—Complaint.—Under Civil Code Prac.
   sec. 134, authorizing the amendment of a pleading at any time
   in furtherance of justice, by correcting a mistake or inserting
   other allegations material to the case, even after the case
   has been partially tried, if it does not substantially change
   the claim or defense, and requiring the court at every stage
   of the action to disregard any defect in the proceedings which
   does not affect substantial rights of the adverse party, there
   was no abuse of discretion in an action for injuries to plain-
   tiff, while working on a flat car on defendant's side track, in
   allowing, after issue joined, an amendment to the complaint,
   which had been drawn on the theory that plaintiff was em-
   ployed by the railroad company, and alleging that he was
   ordered onto the car by the defendant's conductor, so as to
   allege that he was a licensee in the employ of a shipper, where
   it was not contended that defendant was surprised by the
   amendment so that it could not present its real defense, and
   it did not ask for any continuance or postponement to obtain
   witnesses or evidence, or to investigate the new case made
   by the pleadings.
2. Railroads—Injuries to Licensees—Actions—Instructions.—In
   an action for injuries to plaintiff while working on a flat car
   on defendant's side track, alleged to have been caused by de-
   fendant's employes allowing three loaded cars to run down
   the track and collide with the car he was working on, allow-
   ing the cars to run down the track being negligence, and the
   evidence being in conflict as to whether or not there was

any one on them at the time, it was not error to fail to limit the jury in determining defendant's negligence to the consideration of the acts of the persons on the loaded cars alone.

3. Trial—Instructions—Assumptions as to Facts.—In an action for injuries to plaintiff while loading a flat car on defendant's side track, an instruction that if the jury believe from the evidence that defendant placed one of its cars on its side track to be loaded by W. and workmen under him, and that, when plaintiff was on the car as one of the workmen, it was, through the negligence of the defendant, struck by other cars of defendant so that the plaintiff was injured, was not erroneous as assuming that plaintiff was on the car as an employe of W., since the words "that if the jury believe from the evidence" had reference to each of the propositions indicated.

4. Trial—Instructions—Requests—Further and More Specific Instructions.—In an action for personal injuries, where the court charged that, if certain facts were established by the evidence, the verdict should be for plaintiff, it was not error, in the absence of request therefor, to fail to give the converse of this instruction that, if any essential one of these facts was not shown, the verdict should be for defendant.

5. Negligence—Actions—Instructions—Contributory Negligence. —In an action for personal injuries, it was not necessary that the instruction relating to contributory negligence be a separate instruction.

6. Negligence—Actions—Instructions—Contributory Negligence. —In an action for personal injuries, a charge that, if the jury found so and so, the verdict should be for the plaintiff, unless they further found that the plaintiff was so negligent for his own safety that, but for this negligence, he would not have been injured, is not erroneous, as allowing plaintiff to recover, unless his own negligence wholly caused his injury.

7. Negligence—Contributory Negligence.—Where the negligence of a person injured so far contributes to the happening of the event that, if he had not been negligent, the other's negligence would have been harmless to him, he cannot recover.

8. Railroads—Injuries to Licensees—Actions—Damages.—Acts of defendant's employes in turning loose three loaded cars with no one on them, on a siding, which was downgrade, without any notice or warning to persons working on other cars standing on the siding, when the employes knew of their presence, showed a reckless disregard of life, and justified the recovery of exemplary damages by one at work on one of the standing cars and injured in the resulting collision.

9. Damages—Punitive Damages—Instructions—An instruction as to punitive damages should tell the jury that the giving of punitive damages is a matter of discretion.

10. Appeal and Error—Review—Harmless Error—Instructions.—Reversal will not be granted for error in an instruction as to punitive damages, where the court is reasonably convinced that the jury awarded no punitive damages.

11. Appeal and Error—Review—Harmless Error—Instructions.—Under Civil Code Prac. secs. 134, 338, 756, providing that reversal shall not be granted for any errors not appearing from the record to have prejudiced some substantial right of the party complaining, where upon a survey of the whole record the appellate court cannot perceive that anything technically an error has influenced the result, it is their duty to affirm.

12. Trial—Taking Case from Jury—Sufficiency of Evidence.—A peremptory instruction for defendant cannot be granted unless there is total failure of proof to sustain plaintiff's case.

SHELBY & SHELBY, E. B. WILHOIT and H. L. WOODS for appellant.

H. R. DYSARD for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Appellee was employed by a shipper in loading railroad cross-ties at Soldier Station on cars of appellant's railroad. A flat car had been set in on the side track to be loaded with the ties. A local freight train in shifting cars in the siding had moved the one on which appellee was to work. The cars were started back to their proper position, and as they came to a stop, or as they were coming to a stop at the place, appellee mounted the car to begin his work. His first effort was to set the brake so as to hold the car in position; the track being on an incline grade. The crew of the freight train had in the meantime turned into that siding three flat cars loaded with steel T-rails. These latter cars were started into the

downgrade siding without any one on them to set the brakes, and without any control over the cars. They ran against the flat car which appellee had climbed, striking it with such force as to throw him with great violence against the end of the car, fracturing his ribs and otherwise injuring him, as he claims. He was unaware of the fact that the loaded cars were turned into the siding, and no notice of their movement was given to him. He did not see them coming in time to get out of the way. He brought this suit to recover damages for his injury. The verdict and judgment were for $900 in his favor.

Appellant assigns as errors of the trial court (1) its action in allowing an amended petition to be filed after the issue had been joined; (2) that the instructions were erroneous in several particulars; and (3) that the verdict is flagrantly against the evidence and is excessive.

The petition charged that appellee was ordered to get upon the car by the conductor of the freight train. The amendment withdrew that charge, claiming that it had been made by counsel who drew the pleading before a conference with the plaintiff, but that the true state of the case was that appellee was engaged as a laborer for a shipper in loading the car when injured. The petition seems to have been framed upon the theory that appellee was an employe of the railroad company at the time he received his injury, and the amendment upon the idea that he was a licensee. The subject of the action was the alleged negligent injury of the plaintiff by the defendant's agents in the operation of their train. The capacity in which the plaintiff was related to the situation was an incident merely. It is true, it was a material incident. But amendment of pleading is

Chesapeake & Ohio Ry. Co. v. Conley

favored by our Code of Practice. The office of all pleading is to arrive at an issue on the real matter in dispute. It is not the policy of the practice in this state to encourage the trapping of the unwary or unskillful in the art of pleading. On the contrary, it is to present for the court or jury the true issue in dispute, the question of merit about which the parties disagree. Section 134, Civ. Code Prac., authorizes the trial court to "at any time," " in furtherance of justice, and on such terms as may be proper, allow or cause a pleading to be amended" by correcting a mistake in any respect or "by inserting other allegations material to the case." In addition, even after the case has been partially heard on the trial, the court may, "if the amendment does not change substantially the claim or defense," allow an amendment conforming the pleading to the facts proved. The distinction made between allowing the amendment to be filed before and after trial has begun is evidently rested upon the notion that, before the trial has begun, the court by putting the pleader on terms may protect the opposite party, although the nature of the claim or defense may be changed by the amendment; but after the trial has begun, or perchance after the proof is in, to allow such an amendment—that is, one that would change the claim or defense even to conform to the facts proved— might, and frequently would, operate to the surprise of the opposing party, presenting a new issue of fact, one of which he had not before been apprised by his adversary, and to meet which he has not prepared himself. It would also tend to encourage speculative trials, relieving them of all danger from loose practice. But before the trial has begun, if the amendment even change the nature of the claim or defense,

the opposite party may be fully protected, and should be, by the trial court's putting the pleader on such terms as to costs and continuance as will be just. But the law is more concerned with bringing the real dispute to final issue and trial, in which justice may be meted out to the parties as the law is, than with the matter of mere convenience, or even neglectful or artful preparation of a cause, or in determining it otherwise than upon its merits. Hence the liberal provision of that section of the Code, made positively manifest by its concluding clause that "the court must, in every stage of an action, disregard any error or defect in the proceeding which does not affect the substantial rights of the adverse party."

Our Codes of Practice adopted the 1st day of August, 1851, and changed but little since 1854 (although revised in 1877), were fashioned after the New York Code. Kentucky was among the first of the states to adopt the code system of practice, which was promulgated about 1848 in this country. It was brought about largely, it is supposed, upon the spirited and heroic writings of Jeremy Bentham, challenging the common-law practice as archaic, disproportioned to the growing body of substantive law, and as tending to hinder and embarrass the administration of justice, rather than promote it. Under the common-law system, the forms of procedure took precedence often times of the substance of the controversy. Both common-law and equity judges had attempted, and had in a manner accomplished, something in the way of relief from the ancient iron rules by judicial legislation in the form of rules of court, by the adoption of expedients, some of which were subterfuges, called fictions, which but emphasized the necessity for legislation that would

bring the adjective law abreast with the development
of substantive law. Section 134 of our Civil Code
is yet looked upon askance by some lawyers, particu-
larly by skilled pleaders, as something unscientific
and inharmonious, as a breach in the edifice of ex-
act and finished forms erected by the learned plead-
ers of the day of Chitty and Stephens. But it is not.
In its exact language it is found in the Codes of all
but two or three of the states of the American Union
which have adopted the code system, and is substan-
tially the same as the English rules, under the ju-
dicature act. "Both seek to give effect to the prin-
ciple that courts exist not for the sake of discipline,
but for the sake of deciding matters in controversy."
Cropper v. Smith, C. A. 26 Ch. D. 700-710; Becker v.
Walworth, 45 O. S. 169; Bohlen v. Metropolitan Ry.,
121 N. Y. 546, 24 N. E. 932; Cook v. Croisan, 25 Or.
475, 36 Pac. 532. It was first charged and is yet oc-
casionally echoed that the section gives the trial
judge the authority of the "Autocrat of Russia."
Nash, Pl. & Pr. 109. But it has not been found to be
so. For more than half a century this liberal de-
parture has been applied by the judges in its right
spirit, and to the "furtherance of justice"—the end
of all pleading. Rarely has it been abused, and,
when it has been, more instances are found in which
it was too rigorously interpreted than too freely al-
lowed. It is the most elastic provision of the Code,
the one that most enables the law of the remedy to
encompass and to secure the constantly growing body
of the law of right. In this instance appellant does
not claim that it was surprised by the amendment, so
that it could not and did not present its real defense
to the issue which was tried. Nor did appellant ask
a continuance, or even a postponement, to allow it

to summon witnesses upon, or to investigate, the new state of case presented by the pleadings. The employer of appellee was present at the court and testified as a witness. Indeed, he had some time before given his deposition in the case in which he had set out the plaintiff's relation to the work. Appellant's conductor was also present, as was every other eye witness to the occurrence, so far as is disclosed. The court did not abuse a sound judicial discretion in allowing the amendment. On the contrary, he would had he refused it.

The court gave the jury the following instructions:

"(1) If they believe from the evidence that the defendant, the Chesapeake & Ohio Railway Company, placed one of its cars on one of its side tracks to be loaded with ties by one Chas. Waltz and workmen under him, and that when the plaintiff, Elliott Conley, was on said car, or getting onto it to do said work, as one of said workmen, it was through the negligence of the defendant, or its agent or employes, in operating same, struck by another car or cars of the defendant, in consequence of which the plaintiff was knocked down and injured, then the law is for the plaintiff, and the jury will so find, unless they further believe from the evidence that at the time of the alleged injury the plaintiff was so negligent of his own safety that but for such negligence it would not have happened, in which event they will find for the defendant.

"(2) If the jury find for the plaintiff, the measure of damages is a fair and just compensation for any mental and bodily pain he suffered as a direct result of his injury, if any, and any permanent reduction of his power to earn money as the direct result of the injury, if any, and if the jury believe from the evi-

dence the injury, if any, was caused by the gross neg-
ligence of the defendant, they may also award the
plaintiff such sum in punitive damages as they deem
proper, not exceeding in all, however, $2,000, the
amount claimed in the petition."

The other instructions defined correctly negligence
and gross negligence.

It is insisted for appellant that the court should
have confined the jury to the consideration of the
acts of those who were on the shunted cars (the con-
ductor had testified that two brakemen were on those
cars when they were turned loose). The allegation
of the petition was that the negligence was in defend-
ant's "agents, servants, and employes in the man-
agement and operation of its trains and cars." Ap-
pellee and others testified that there was no one on
the loaded cars. It was negligence of itself to turn
loose on a down-grade three heavily loaded cars, so
that they would collide with other cars placed on the
siding to be loaded and about which men were en-
gaged at work loading them, or preparing to do so;
and it was the negligence of the servants and agents
of the defendant in the management of appellant's
train and cars.

It is also urged for appellant that the first in-
struction is faulty, in that it assumes as a fact what
was denied by the defendant, that the plaintiff was
getting on the car in the capacity of an employe under
Waltz, when it says: "And that when the plaintiff,
Elliott Conley, was on said car, or getting onto it
to do said work, as one of said workmen." The
court meant to say, and did say, by the instruction
that the plaintiff's right to recover was based upon
these propositions, or facts, which had to be estab-

lished by the evidence: (1) That the railway company had placed on one of its side tracks to be loaded with ties by Waltz and workmen under him (for, if it had not been so placed, then Waltz's workmen had not the right to be on the car, and the defendant owed them no duty to watch out for their safety); (2) that plaintiff was on the car or getting onto it to do said work (for, if the plaintiff was not on the car, or, if on it, was there for some other purpose, such as volunteering to brake it for the railroad men, he would be without the protection he was seeking); (3) that it was through the negligence of the railroad employes struck by another car of the defendant; (4) that the plaintiff was thereby knocked down and injured. The opening sentence, "if they believe from the evidence," had reference to each of the propositions indicated, as did the one "the court tells the jury that." It is not assumed that the plaintiff was on the car as a workman any more than that he was knocked down and injured. The jury could not have misunderstood the grammatical connections of the instruction, as counsel for appellant on the trial evidently did not, as he did not offer one in another form conveying the idea being discussed.

It is next insisted that the converse of the first instruction should have been given to the jury. It would have been proper to do, and doubtless would have been had the defendant requested it. Of course, when the jury were told that in order to find for the plaintiff, they must believe so and so as being established by the evidence, they will understand that if those facts, or any essential one of them, is not so established, they must find for the defendant. Jury trials are so common and constantly occurring that

it is scarcely probable that a jury entirely without experience and knowledge of their functions would be impaneled in this country. Appellant, if it had doubt on the subject, should have requested the trial court to have so instructed. Not having done so, it will not be heard to complain for the first time on appeal that the court should have instructed so.

It is seriously urged that the instruction defining contributory negligence should have been given as a separate instruction, and should have told the jury that although they should believe the plaintiff's injury resulted from the defendant's negligence, as defined in the instructions, yet if they further believed that the plaintiff was at the time also guilty of negligence, which contributed to his injury, and but for which the injury would not have occurred, the law was for the defendant. The practice is generally to follow the form indicated by appellant. But frequently trial judges use the form adopted by the circuit court in this case. When the jury were told that they should find for the plaintiff if they believed so and so as defined in the instruction, "unless they further believe," etc., they must have understood that, if they further believed as set out in the instruction, they could not find for the plaintiff, although they believed all the facts to have been established as was required by that instruction. The principal criticism urged against this part of the instruction is that it relieves the plaintiff unless his own negligence wholly caused his injury, whereas the law requires only that the plaintiff's negligence should have contributed to his injury, and that but for it the injury would not have happened. It is true the law of contributory negligence takes cognizance of the negligence of each of the actors. It does not measure or

weigh the degree of negligence in each as by comparison. It merely holds that when the plaintiff's own negligence so far contributed to the happening of the event that, if he had not been negligent, the other's negligence would have been harmless to him, then he ought not to recover. In L. & N. R. R. Co. v. Clark's Admr. 105 Ky. 584, 49 S. W. 326, 20 Ky. Law Rep. 1379, the instruction to the jury was, "unless they believe from the evidence that the deceased was guilty of such contributory negligence as caused his own death." It was said of it: "By these words the jury were told that the contributory negligence of deceased must have been such as to wholly cause his own death." The language of the instruction now under consideration is: "Unless they further believe from the evidence that at the time of the alleged injury the plaintiff was so negligent of his own safety that but for such negligence it would not have happened." We do not understand this to mean that the cause of the injury must have been wholly the plaintiff's own negligence before the company was excused. But if the jury believe from the evidence that the company's employes were negligent as alleged, and plaintiff was thereby injured as claimed, the jury should find for him unless his own negligence was such that it became the efficient, though not the sole, cause of the injury; that otherwise the injury would not have happened. It presented to the jury the negligence of each party. We think the instruction on this subject offered by appellant was in better form of expression, and the one given was in this respect dangerously near the line condemned in L. & N. v. Clark, supra. The evidence of contributory negligence is very slight; and consists wholly in the plaintiff's own testimony. He is shown

to be an ignorant man, and was partially deaf at the time of the trial. The testimony shows that he was confused, and did not understand many of the questions, especially if any wise complicated in form. There are points in his testimony where he seems to admit that he got upon the car to stop it at somebody's call to him to do so. But we are satisfied, just as the jury seems to have been, that he got on the car to commence his work, and that his first act in attempting to set the brake was to hold the car in place. He did not see the other cars coming. No one of the others there did until plaintiff was on the car, except Waltz, and he saw them too late to do more than jump on the car and grab a brake. If plaintiff did not know that the other cars were coming, then his act in setting the brake the first thing he did when he got up was not contributory. negligence, because his injury was not the result of his handling the brake. Some one told him to get upon the car. Whether his employer or a fellow laborer is not known. No one was there except the laborers and the employer so far as the evidence discloses. Whether plaintiff was prompted by his own eagerness or somebody's admonition to hurry and get on the car is not material. His getting on the car was the proper thing for him to have done at that moment, unless he was aware of the movement of the other cars upon the track. There is not evidence that he was aware of anything to put him in peril even though others were. We are not satisfied that appellant was prejudiced in any substantial right by the form of the instruction.

It is also urged against the instructions that it was error to allow a recovery of exemplary damages. We think that to turn loose on a downgrade three

heavily loaded freight cars to run into other cars placed on a siding to be loaded and which were in the act of being loaded by a number of workmen, all with the knowledge of the trainmen, yet without any one of the cars to stop them, or without any warning being given of their movement, is a reckless disregard of life. The fact that the place was in a village, or near its edge, or even in the country, is not material. There were workmen, some half dozen, about that track and those cars, licensees, whose presence and safety the railroad company was obliged to look out for. An utter disregard of their known presence justifies the infliction of punitive damages.

Appellant insists that the form of the instruction allowing punitive damages is erroneous. The jury were told that, if the injury "was caused by the gross negligence of the defendants, they may award the plaintiff such sum in punitive damages as they may deem proper, not exceeding," etc. In I. C. R. R. Co. v. Houchins, 121 Ky. 535, 89 S. W. 530, 1 L. R. A. (N. S.) 375, 123 Am. St. Rep. 205, this instruction was condemned on the ground that it should have clearly indicated that the jury had the discretion to allow, or not to allow, punitive damages, even though they believed the negligence was gross. But that case was reversed for other and grave reasons. It is not clear that the court would have reversed upon that ground alone, especially if the amount of the verdict did not indicate that probably punitive damages were inflicted. We adhere to the rule laid down in I. C. R. R. Co. v. Houchins, supra. But we are so firmly convinced that the jury did not give punitive damages in this case that it seems to us it would be trifling with justice to set aside the judgment and

verdict upon that ground alone. While we have doubts about this case, arising altogether, however, upon matters of practice, we can not reverse merely upon doubt. The grounds of doubt have been set forth in this opinion. The Legislature has been at pains to emphasize the duty of this court not to reverse for any error not appearing from the record to have prejudiced some substantial right of the party complaining. Sections 134, 338, 756, Civ. Code Prac. By that we understand not that we are substituted for the jury as triers of the fact, or even in the assessment of the amount of recovery, but that we must be satisfied that the error of practice complained of misled the jury, and caused them to reach a conclusion which otherwise they would not have reached. If the result indicates that it is so irrational, or is not consistent with the evidence, although not flagrantly so, is, in short, strained, we may look to other parts of the proceedings to ascertain the probable cause, and when found to consist of erroneous rulings of the trial judge/to hold that they, if they logically tend so, were the cause. But, when upon a survey of the whole record we can not perceive that anything that transpired, technically an error, has influenced the result, our duty is to pass it by as it passed over the heads of the jury. On this record we can not say that the error assigned by appellant perceptibly affected the result.

Whether the peremptory instruction asked for by appellant should have been given depends on whether there was total failure of proof to sustain plaintiff's cause. There was not such failure. And whether the verdict is flagrantly against the evidence, as argued by appellant, depends on whether isolated statements of the plaintiff in his testimony tending to show that

he jumped on the car as a volunteer brakeman to stop it should be accepted as true, to the exclusion of his other statements that he got on the car preparatory to doing his work. Manifestly it was for the jury to harmonize the seeming conflict in this witness' testimony, and to give it such credit as it reasonably appeared entitled to. They had the benefit of seeing the witness depose, of judging of his capacity of understanding and expression, and from the whole of his testimony to gauge the truth of the matter. We can not say from the record that their verdict is flagrantly contrary to the evidence. The fact that the learned trial judge, a lawyer of wide experience, a judge of extensive and notable service, refused to set the verdict aside as being even against the weight of the evidence, confirms our view as to the jury's conclusion being sustained by the whole of the evidence.

Judgment affirmed.