# Cincinnati, New Orleans & Texas Pacific Railway Company v. Gardner.

(Decided May 26, 1915.)

## Appeal from Pulaski Circuit Court.

1. Master and Servant—Injury to Servant From Change of Conditions—Negligence of Superior—Assumption of Risk.—Where a servant, at work for the master in loading steel rails upon a flat car, was injured by the slipping of a skid, caused by the negligence of his superior in the master's service in requiring another servant, during the progress of the work, to change the position of the skid from a reasonably safe place on the flat car to a place thereon which did not afford it a reasonably safe support, the servant injured did not assume the risk resulting from such change in the position of the skid, if he did not hear the order from his superior to the other servant to change the position of the skid, or understand that it had reference to the skid by which he was injured, and his injuries resulted before he knew of, or could by the use of ordinary care, have discovered, the danger arising from the change in the position of the skid. In such case the questions, whether the superior was guilty of negligence in causing the change in the position of the skid, and whether the injuries to the servant were caused by such negligence, or by the latter's contributory negligence, were for the decision of the jury.

2. Master and Servant—Injury to Servant—When Negligence of Superior Must Be Gross To Authorize Recovery Against Master—Instructions—Error In.—It is a well established rule in this jurisdiction, that in an action brought by a servant for injuries received through the negligence of an agent of the master, who is his (the servant's) superior in authority, and death does not result from such injuries, there can be no recovery unless the negligence of the superior be gross; and instructions which do not so advise the jury, will, in the event of a verdict for the injured servant, compel a reversal of the judgment entered thereon.

O. H. WADDLE & SONS and JOHN GALVIN for appellant.

W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Thomas Gardner, while in the employ of the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, and engaged with other of its servants in loading steel rails on a flat car under the direction of its assistant foreman, was injured by the falling of one of the steel rails upon him, which fractured one of the bones of his ankle and crushed his foot, thereby

causing him great mental and physical suffering and permanently impairing his ability to labor and earn money.

This action was brought by him in the Pulaski Circuit Court to recover of the appellant damages for the injuries thus sustained, it being alleged in the petition that his injuries were caused by the gross negligence of appellant and its servants superior in authority to him. The answer of appellant denied the negligence complained of and alleged that appellee's injuries were caused by the negligence of a fellow servant, and, further, that in the matter of receiving his injuries he was guilty of contributory negligence, but for which they would not have been sustained. The affirmative matter of the answer was traversed by reply. The trial resulted in a verdict awarding appellee $1,000.00 damages against appellant; and, from the judgment entered upon that verdict, the latter has appealed.

We gather from the evidence that the steel rails were being loaded on the car by appellee and his fellow workmen by the use of skids made of two steel rails, one end of each resting on the floor of the car and the other on the ground a few feet distant. The rails were picked up from a pile on the ground, placed on the skids and by degrees pushed or lifted on the skids up to and upon the car, where they were so placed as to make room for the loading of others. The rails were so heavy that the combined strength of the ten laborers present was required to load each of them. It appears from the evidence that when the loading of the rails on the car began the end of the skid near which appellee was working was resting upon a flat piece of iron know as a "cuff," which was attached to the floor of the car and contains a hole for the insertion of a standard, used to prevent timber or rails that are put upon the car from falling off. The cuff is four or five inches in width and its position such that the floor of the car at each side of it is an inch above its edge, which makes a depression of an inch in that part of the floor occupied by the cuff.

According to appellee's evidence, in loading steel rails on a flat car it is customary and safer to rest the end of the skids at the car on these cuffs, as they are less liable to slip from the cuffs than from the wooden floor of the car, the timbers of which at their ends or the edge of the car soon become greasy and slick from use. It further appears from the evidence that after the work

of loading the rails had progressed to the extent of getting three or four of them on the car, some of the workmen present, by direction of Buckner, the assistant foreman who was in charge of the force, removed the end of the skid near which appellee was working from the cuff upon which it was resting to the floor of the car at the side of the cuff, and that shortly after being so placed and while appellee and his fellow workmen were moving a rail upon the skids toward the car, the skid which had been removed from the cuff by order of the assistant foreman slipped from its place on the floor of the car, which caused the rail that appellee and his fellow workmen were loading to fall from its place on the skids and on appellee's leg and foot, resulting in the injuries complained of by him.

The evidence introduced in appellee's behalf all conduced to prove that the change of the end of the skid in question from the cuff to the floor of the car, rendered it unsafe for use in loading the steel rails on the car, and that such change in its position led to the slipping of the skid and caused the injuries sustained by him. On the other hand, the evidence introduced in appellant's behalf conduced to prove that the change in the position of the skid left it as safe for use as when it rested upon the cuff, and that the change was necessary to place the skid at a proper distance from the other skid used in loading the rails. So there was a contrariety of evidence as to whether the change in the position of the skid rendered its use in loading the rails unsafe or more hazardous than when it rested upon the cuff, as well as to the question whether such change caused the slipping of the skid and the consequent injuries received by appellee. There was also a contrariety of evidence as to whether appellee knew of the change in the position of the skid before he received his injuries. In testifying he admitted that he heard Buckner, the assistant foreman, give some order about one of the skids, but as he was at the time in the act of assisting in lifting another rail from the ground preparatory to its removal to the car, he did not understand the precise character of the order given by the assistant foreman or that it applied to the skid near which he was working, and it is not apparent from the evidence that he observed the position in which the skid was placed on the car after it was removed from the cuff; but it does appear from the testimony of several of his fellow workmen that they did not

know of the change made in the position of the skid before his injuries were received. It was, however, testified by appellant's assistant foreman and some of the workmen present, that the order given by the foreman to change the position of the skid was distinctly announced in a tone of voice loud enough for appellee and all others present to have heard it, and that there was no reason why they should not have done so.

It is patent from what has been said that the issues of fact arising from the conflicting evidence compelled the submission of the case to the jury, hence there was no error in the trial court's refusal of the peremptory instruction asked by appellant after the introduction of appellee's evidence and again at the close of all the evidence; and its complaint of the ruling of the court in that particular is without merit.

It is equally apparent that appellant's contention that appellee's injuries were caused by the negligence of a fellow servant, is untenable. Indeed, it is wholly without support from the evidence. The act of one or more of appellee's fellow servants in changing the position of the skid does not sustain the contention, for he or they, in making the change, effected it by the order of the assistant foreman and in the manner specifically directed by him, and as he was their superior and that of appellee, in appellant's service, the negligence involved in the act, if any there was, must be attributed to him and through him imputed to the appellant.

We cannot agree with counsel for appellant that contributory negligence on the part of appellee was conclusively shown by the evidence. There was, it is true, evidence tending to show that he knew or by the exercise of ordinary care might have known of the change in the position of the skid before his injuries were received, but as, according to his testimony and that of several other witnesses, he did not understand that the order from the assistant foreman had reference to the changing of the skid by the slipping of which he was injured; and that his injuries resulted so quickly after the change that he could not, by the use of ordinary care, have discovered the danger arising from such change before his injuries were received, there is no ground for saying that there was not a conflict of evidence as to the question of contributory negligence. Hence, it was properly submitted by the trial court to the decision of the jury.

There is no ground for the further contention of appellant's counsel that the case before us authorizes the application of the doctrine of assumed risk; nor do the pleadings present a case in which there was primarily a failure on the part of the master to provide a reasonably safe place or reasonably safe appliances for the performance of the work required of the servant, because the place of work and appliances for performing it were reasonably safe when the work was commenced and for a time thereafter. The danger complained of by appellee as resulting in his injuries, was later created by the change of condition, viz., the change in the position of one of the skids furnished by appellant for use in the loading of rails upon its cars, and where the danger resulting in injury to the servant is created by a change of conditions, and such change in conditions is caused by the negligence of the master or his agent superior in the master's service to the party injured, and the servant is injured by such negligence, the latter, in the absence of knowledge on his part of the danger, cannot be said to have assumed the risk; and in order for the master to escape liability on the ground that the risk was assumed by the injured servant, he must show that the servant voluntarily subjected himself to the new danger, with knowledge thereof, or that the means of his obtaining such knowledge was such that the exercise of ordinary care on his part would have enabled him to discover it. Lex. Ry. Co. v. Cropper, 142 Ky., 39; Cumb. Tel. & Tel. Co. v. Graves, 31 R., 973; Lou. C. & Lex. R. Co. v. Cavin's Admr., 9 Bush, 565; L. & N. R. Co. v. McMillan, 119 S. W., 221; Meade v. Ashland Steel Co., 125 Ky., 114; Labatt on Master and Servant, Vol. 1, Sections 270-279.

While, therefore, the servant assumes all the open and visible risks incident to the employment in which he engages, he does not assume such risks as arise out of the master's negligence.

Finally, it is insisted for appellant that the trial court erred in instructing the jury. We must sustain this contention. The instructions as given by the trial court permit a recovery for ordinary neglect or negligence on the part of appellant's assistant foreman, Buckner, who was admittedly in charge of the work at which appellee was engaged at the time of receiving the injuries complained of. While he and Buckner were in the same department of service, the latter, as assistant foreman, was his superior therein, because he was immediately

over and had the authority to direct the appellee in the performance of the work in which he was engaged. It is a well established rule in this jurisdiction, that in an action brought by a servant for injuries received through the negligence of an agent of the master who is his (the servant's) superior in authority, and death does not result from such injuries, there can be no recovery, unless the negligence of the superior be gross. Ohio Valley Coal & Mining Co. v. Heyne, 159 Ky., 586; C. & O. Ry. Co. v. Laney, 154 Ky., 38; United Iron Wks. v. Bowling, 153 Ky., 683; Milton's Admr. v. Frankfort & Versailles Traction Co., etc., 139 Ky., 57; L. & N. R. Co. v. Foard, 104 Ky., 456; C. & O. Ry. Co. v. Markham, 136 Ky., 245; I. C. R. Co. v. Elliott, 26 R., 669; I. C. R. Co. v. Coleman, 22 R., 878; Board v. C. & O. Ry. Co., 24 R., 1079.

The error referred to occurs in at least two of the instructions. That is, instruction No. 1 fails to require the jury to find appellant's assistant foreman guilty of gross negligence before they can return a verdict for appellee. In other words, the word "gross" is not used in the instruction at all. Instruction No. 5 defines negligence as used in the instruction as, "the failure to exercise ordinary care," whereas, the definition should have been that of gross negligence.

In other respects we regard the instructions substantially correct, but as it was the province of the jury to determine from the evidence whether appellee's injuries were caused by the gross negligence of appellant's assistant foreman, if he was guilty of negligence at all, and the instructions improperly authorized a verdict for appellee if the jury believed from the evidence that his injuries were caused by the negligence of appellant's assistant foreman, although such negligence was less than gross, it is manifest that appellant did not receive a fair trial.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.