## Flummer's Administrator v. Tri-State Telephone Company, et al.

(Decided November 28, 1919.)

## Appeal from Harlan Circuit Court.

1. Master and Servant—Negligence—Question for Jury.—Where the servant of a construction company, who was engaged in clearing off a right-of-way for the improvement of a public road along which ran a telephone line, was killed by the falling of a telephone post caused by one of the servants of the construction company cutting down a tree which fell across the telephone wires, resulting in breaking off the post and causing it to fall, and the testimony showed that the foreman of the company knew of the cutting of the tree and consented that it might be done, and knew that it was about to fall across the wire and failed to warn the injured servant: Held, that it was a question for the jury to determine whether the foreman was guilty of such negligence as would charge his master. The question whether the two servants were fellow servants so as to relieve the master of the consequences of the act of the one cutting down the tree not being decided.

2. Master and Servant—Negligence—Proximate Cause.—Whether the death of the deceased was the proximate result of the alleged negligent act of cutting down the tree across the wire depends upon whether such a consequence could have been foreseen and anticipated by a reasonably prudent person under all the circumstances, and it should be left to the jury under appropriate instructions.

3. Telegraphs and Telephones—Maintenance of Wires—Condition in Which to be Maintained.—The owner of a telephone line, who was also sued, is not liable, under the facts of this case, since it was not required to maintain its wires and posts in such condition as to resist the falling of a tree upon them, but only in such condition as to make them reasonably safe against accidents to those using the highway along which the telephone line ran.

ROSE & HUFF for appellant.

H. C. CLAY and WILLIAM BAXTER LEE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

S. J. Condon & Company (hereinafter referred to as the construction company) is a corporation engaged in construction work. It had a contract for the reconstruc-

tion of a public highway in Harlan county. Along the highway to be improved the Tri-State Telephone Company (hereinafter referred to as the telephone company) maintained a telephone line which was used in the transmission of telephone messages, and over which wires the Western Union Telegraph Company (hereinafter referred to as the telegraph Company), by some traffic arrangement with the telephone company, transmitted its messages between Pineville, Kentucky, and Harlan, Kentucky.

On July 27, 1916, the foreman of the construction company, Leander Creech, with a crew of about eight hands, was engaged in clearing off the right of way for the proposed improved road, parts of which ran over the old road bed, other parts to the side and off of it, and while so engaged one of the hands chopped down a tree, which was about twelve or fifteen inches in diameter, and it fell upon the telephone wire near by, causing one of the telephone posts to break off at the ground and fall. In doing so it struck Hobart Flummer (another member of the crew) on the back of the head, and instantly killed him. Appellant, as administrator of the deceased, brought this suit against the construction company, the telephone company, the telegraph company and the foreman, Creech, seeking to recover damages for the alleged negligent killing of plaintiff's decedent, in the sum of $20,000.00.

The negligence alleged against the construction company was that it, through its agents and servants, negligently caused the tree to be cut and fall upon the wire, which was the direct and proximate cause of the falling of the telephone post, resulting in the decedent's death, and the same negligence was charged against the foreman, Creech.

It was alleged against the telegraph and telephone companies that they had negligently maintained their posts and line, and suffered the posts to become rotten, and that but for which the post would not have broken or fallen upon the deceased.

The telegraph company did not answer, since it was determined by the court that service upon it was not properly had, and the return of the sheriff on the summons against it was quashed. The other defendants answered, denying the allegations of the petition, and pleading as-

sumed risk and contributory negligence. Appropriate pleadings denying these pleas made the issues.

During the progress of the trial the plaintiff dismissed the suit as to the foreman, and the court at the close of the testimony sustained the motion for a peremptory instruction as to the construction company and the telephone company, which motion was followed by a verdict in their favor, upon which judgment was pronounced dismissing the petition, and complaining of it the plaintiff prosecutes this appeal.

The undisputed facts found in the record are that the deceased was seventeen years old, and met his death within a short while after beginning work on the second day of his employment. At the time he and a co-laborer were engaged in rolling a log off of the contemplated right of way, which was about 108 feet from where the tree was being felled. As we gather from the proof, the deceased was down on the ground, with his chest against the log. A servant of the construction company by the name of Ben Noe, who was twenty years of age, chopped down the tree, and between the place where he was at work and where the decedent was rolling the log were obstructions in the way of undergrowth, and there was also a large rock which served to prevent the deceased, in his position, from seeing Noe. About fourteen feet from the deceased was the fatal telephone pole, which was the one nearest him from where the tree fell on the wire. The tree was located on the side of a steep hill, and in falling down the hill it struck a dogwood bush and was thrown against the wire, causing the post near the deceased to break and fall, resulting in his death. Noe had been at work for about an hour, only. He testified that he did not know the location or situation of the deceased, nor did he have any knowledge of the condition of the telephone post, and in telling how he came to cut the tree, said:

"I asked him (Creech) must I go and cut that tree, and he said if I thought I could throw it off the wire to do so, and I told him I didn't know whether I could or not, I would try, and he said all right."

After that, and before the accident, the foreman directed the deceased to roll away the log, and when the tree was about to fall the foreman was within fifty-three feet of it, being between the deceased and the tree, and saw Noe and other servants pulling a grapevine to keep

the tree from falling against the wire. According to his testimony, he saw this one or two minutes before the tree fell, but he neither went to assist in preventing the tree from falling across the wire, nor did he warn the deceased so that he might guard against possible accident.

There is slight conflict between the testimony of the servant Noe and the foreman as to what occurred with reference to cutting of the tree. The foreman does not deny in terms the testimony of Noe upon this subject, nor does he deny that he directed Noe and those working with him to cut the particular tree in question, but says that he told them to "cut the small saplings and brush, but these larger things up here, don't cut anything that will fall on the wire." However, he admits that he afterward saw that Noe and his companions were chopping down the tree.

It is insisted by the construction company that Noe and the deceased were fellow servants, and that the master is not liable to the deceased for the negligence of a fellow servant. This insistence is resisted by the plaintiff, who contends that under the doctrine known as the "association theory," as set forth and upheld in the cases of L. & N. R. R. Co. v. Brown, 127 Ky. 732; Louisville Railway Co. v. Hibbit, 139 Ky. 43; Harris v. Rex Coal Company, 177 Ky. 630, and cases referred to therein, Noe and the deceased were not fellow servants so as to relieve the master of liability for the negligence of the former, and that the court erred in applying the fellow servant doctrine to the facts of this case.

In the Brown case the injured servant was head brakeman on a freight train of the master, the Louisville & Nashville Railroad Company, and was injured through a head-on collision between his train and a work train of the railroad company, which collision, it was alleged, was brought about through the negligence of a flagman on the work train failing to flag the freight train upon which the plaintiff was working, and it was held that the flagman of the work train was not a fellow servant of the brakeman on the freight train.

In the Hibbitt case the injured servant was a motorman on a street car operated by the Louisville Railway Company, and he was injured in a collision with another car operated by a different crew, and it was held that the servants operating the latter car were not fellow servants with plaintiff.

In the Harris case the deceased was engaged in uncoupling coal cars and shoving them to the place where they were dumped, all of which work was performed at the bottom of a 600-foot incline. Another servant of the company was engaged in coupling cars at the head of the incline, preparatory to being sent down, and receiving other cars coming up the incline. Through his negligence some loaded cars were permitted to run down the incline and killed the deceased, and it was held that the relation of fellow servant did not apply as between the deceased and the servant at the top of the incline, whose negligence caused the accident.

The reason underlying the association theory is well stated in the Brown case in this language:

"When the servant is injured by employes of the same master, who are not directly associated with him and with whom he is not immediately employed, and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he can not protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds."

It is argued in the instant case that the testimony shows that the deceased was so situated with reference to the servant, Noe, that he could not see what the latter was doing, nor pay any attention as to how he was performing his work so as to protect himself against Noe's negligence, if any, and that under the association theory the latter was not his fellow servant. But whether that doctrine shall be carried to the extent contended for, we do not deem it necessary to decide under the facts of this case, for we are convinced that Noe's action and conduct in cutting down the tree was with the consent and knowledge if not direction of the foreman, Creech, and practically under his supervision. In such cases the negligent act of the servant producing the injury becomes the negligence of the master, notwithstanding the negligent servant may be a fellow servant of the one injured. Burton Construction Company v. Metcalfe, 162 Ky. 366, and C. N. O. & T. P. Ry. Co. v. Gardner, 165 Ky. 48.

In the Metcalfe case the crew was employed by the Burton Construction Company in knapping rock.

The plaintiff and others were at the foot of the hill engaged in that work, while others were up the side of the hill breaking large rock into smaller pieces,. which were afterward still further reduced by plaintiff and his associates at the foot of the hill. The servants on the side of the hill negligently permitted a large rock to roll down the hill, striking plaintiff, resulting in his injury, and it was held that although the negligent servant might be regarded as the fellow servant of plaintiff since the former was working under the immediate direction and in the presence of the foreman, the negligence was that of the master. Quoting from the case of L. & R. R. Co. v. Crady, 24 Ky. Law Rep. 2339, the court said:

"For appellant it is claimed that Thomas being in the same line of employment as appellee was a fellow servant, and that the negligence resulting in the accident, if any one was negligent but appellee, was that of Thomas, and that, therefore, there can be no recovery. There was proof to support the claim of appellee that Thomas acted under the direct command of his superior, and that therefore his act was the same as if the superior in person had done the thing. In other words, the act was not the result of Thomas' judgment or lack of judgment, or his care or lack of care. The controlling mind in the transaction was that of the foreman."

The opinion in the Gardner case follows the same rule, and we are clearly of the opinion that the court erred in failing to submit to the jury the issue as to the negligence of the foreman in consenting or directing the tree to be cut in the manner it was, and in not warning the deceased that the tree was about to fall in such manner as to strike the wire. since, according to his own testimony, he had ample time in which to do so, after the discovery that the tree was about to fall.

Still another question is presented—which is, conceding that the felling of the tree in the manner it was done was negligence, and that the master is liable therefor because it was done at the direction of and with the consent of the foreman, was the death of the deceased the proximate result of that negligence? This question is not argued by counsel for either side, but since it is presented, and is an element affecting the rights of the parties, we conclude that it is our duty to briefly notice it.

In the very recent case of Nunan v. Bennett, 184 Ky. 591, we had occasion to consider this question at some length, and we arrived at the conclusion that where the consequences flowing from the alleged negligent act were such that an ordinarily prudent person under all the circumstances might have reasonably foreseen or anticipated the one perpetrating the act, or who is responsible therefor, would be liable for such consequences. It was therein said:

"The rule is well settled that to fix liability upon a person for remote negligence, the injury complained of must be one that under all the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural and probable consequence of the first negligent or wrongful act."

Under the facts of this case there were a number of workmen in the vicinity where the tree was being felled, and it is in proof that the foreman knew that the telephone posts were very much decayed, that slight force would cause them to fall, and we think it was a question for the jury to determine whether he should have anticipated and foreseen the probable consequences of injury to some member of the crew if one should fall. The court should have submitted to the jury whether the felling of the tree under the circumstances was negligence, and whether it was done under the direction and with the knowledge and consent of the foreman, and whether he, in the exercise of a reasonable prudence, should have foreseen or anticipated that one of the posts would fall as a result of the tree striking the wire and injuring one of the servants employed on the job.

It results, therefore, that the court erred in sustaining the motion for a peremptory instruction in favor of the construction company.

In regard to the peremptory instruction in favor of the telephone company but little need be said. Its duty to strangers required it only to maintain its wires and posts in a reasonably safe condition for those using the highway along which the line ran. This necessarily means the use of the highway by the traveling public. No law, so far as our research goes, requires such a company to maintain its wires and poles so as to successfully resist the cutting down of a tree upon them, and the fact that

the poles may have, through the negligence of the company, become decayed around the bottom so as to render them weak will not alter the company's responsibility under facts like those in the case before us, since it is not pretended by any one that the pole would have fallen but for the falling of the tree on the wire, for which the telephone company is in no wise responsible.

Wherefore, the judgment is affirmed as to the telephone company, but it is reversed as to the construction company, with directions to grant a new trial as to it, and for proceedings against it in conformity with this opinion.