## Codell Construction Co. et al. v. Steele.

(Decided Jan. 31, 1933.)

174

F. J. EVERSOLE and MORRIS & JONES for appellants.

J. T. BOWLING and S. M. WARD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This is an action for personal injury tried before a jury in the Perry circuit court, in which Dr. M. W. Steele recovered a judgment of $500 against the Codell Construction Company and J. A. Committo & Son.

For his cause of action Dr. Steele charged in his petition that on the 9th day of January, 1928, while riding horseback on the Hazard-Hindman highway, then under construction by the defendants, and crossing a

culvert constructed by them across the highway, the horse he was riding fell through the culvert and threw him off, his back striking a rock and seriously injuring him, from which he had suffered great mental and physical pain; that his injury was permanent, and by reason thereof he was unable to attend to business for several weeks.

The Codell Construction Company and J. A. Committo & Son traversed the petition, and by paragraph 2 of their answer pleaded that the Codell Construction Company was a contractor and J. A. Committo & Son were its subcontractors to construct the highway according to the plans and specifications of the State Highway Commission, and were, by reason thereof, acting as agents of the state, and therefore they were exempted of all liability. By paragraph 3 they pleaded contributory negligence on the part of Dr. Steele. In paragraph 4 they charged that Dr. Steele knew the highway was incomplete, defective, and unsafe for travel, and that the danger incident thereto was open and obvious, and that he knew before and at the time he went upon the culvert of its dangerous and unsafe condition, and by reason thereof he assumed the risk incident thereto.

A consideration and disposition of the questions presented require a presentment of the evidence. To be accurate, we quote a portion of the testimony of Dr. Steele, showing his view of how he sustained his injury. He stated:

"I was riding horseback from Hazard to Hindman, and about 11:30 o'clock I approached a culvert, about half a mile below Dwarf near Ben Engles home as I later learned. The culvert had no evidence of being unsafe, the top was smooth, but as the horse struck this culvert, he slipped and I was pitched forward as the horse plunged down. I don't know just what happened to the horse. One of his legs went through the culvert and I was pitched forward and I jumped to my right to avoid the recovery of the horse. I landed on that slick mud and fell backward across the edge of a rock. When I became able to obtain my footing, as I hit the ground, I slipped and I landed on that sharp rock and for some little while, I seemed to be un-

conscious. When I regained consciousness I was lying there in the mud and I saw the horse standing on the left side of the road. As I started to get up I didn't see anyone anywhere, and then seeing the house which proved to be the home of Ben Engles, I was able to walk and lead the horse down to the house.''

Elsewhere in his testimony he stated that ''it was plain that the road was traveled a great deal over the crossing; that the top of the culvert was made of smooth pine boards, eight (8) feet in length; the eight (8) foot boards had been matched with two (2) foot boards. The two (2) foot board which tripped his horse had not been nailed. It was plain that the matching of the eight (8) foot boards with the two (2) foot boards was the cause of this trouble.'' The latter testimony of Dr. Steele was corroborated by other witnesses.

In behalf of the contractor and subcontractor, it was shown that the road was being constructed by them under a contract with the State Highway Commission. It was further shown that a detour had been constructed by the contractors, and at the intersection of the Hazard-Jackson road with the road going to Hindman a sign was erected reading, ''Road under construction; travel at your own risk. Codell Construction Co.,'' and also about 300 feet before the detour was reached a sign which read, ''Closed; Detour,'' was on a beech tree, with an arrow pointing to the detour. The detour was made by the subcontractors and paid for by the state. The temporary bridge on which Dr. Steele claims to have been injured was constructed for the purpose of hauling cement to prevent its getting damp in going through the creek, and was constructed by the subcontractors for that purpose. The plaintiff's testimony shows that the traveling public used both the detour road and the road over the temporary culvert. Carl Patton testified that on the date of Dr. Steele's injury and some time previous thereto he was engaged in carrying the United States mail, that on the date of Dr. Steele's injury the detour was filled up with dirt and had been for some time, and that he had been driving his mail wagon over the new road for two or three weeks, and that the public had been using the new road, including the culvert.

Dr. Steele suffered severe bruises to his back, at the top of his hip bone, near the spine. He suffered for several weeks, and now has to wear a brace to support his back and spine. He cannot now do any work of a surgical nature on account of his nervous condition. When submitting the issues to the jury, the court gave to the jury instructions Nos. 1, 2, 3, and 4. Instruction No. 1 directed to jury to find for Dr. Steele if it believed from the evidence the defendants negligently and carelessly constructed a temporary bridge, and negligently and carelessly permitted same to be and remain in a dangerous and unsafe condition, and permitted the public to use it while in this condition, and that, if it believed from the evidence that his injury was caused and brought about by reason of this negligence and carelessness, if any on their part, to find for the plaintiff such sum as will fairly and justly compensate him for pain and suffering caused by his injuries, and for the diminution of his power to earn money, if any, caused by his injury, not exceeding the amount sued for.

By instruction No. 2 it directed the jury that, if it believed from the evidence that Dr. Steele had notice or knowledge of the unsafe condition of the temporary crossing, or of such facts as would cause a person of ordinary prudence and caution to ascertain its condition, but despite his knowledge he attempted to cross it, to find for the defendants.

Instruction No. 4 defined Dr. Steele's duty respecting the detour, and instructed the jury that, if it believed from the evidence he failed to travel the detour and went upon and across the temporary bridge with knowledge of the existence of the "detour" he thereby assumed the risk, and it should find for the defendants.

As to the contention that the road was an original construction, being made under a contract with the State Highway Commission, and that the contractors were agents of the state, and therefore exempt from liability, the opinion of this court in Taylor v. Westerfield, 233 Ky. 619, 26 S. W. (2d) 557, 69 A. L. R. 482, is a complete answer thereto. In that case the rule was distinctly stated that, where an independent contractor is prosecuting work under a contract with the state or any subordinate arm thereof, he is responsible in damages to the injured third parties for his negligence in prosecuting the work, just as though he had

engaged in private work. Following the principles of this case, the court correctly submitted to the jury by instruction No. 1 the issue of negligence. This instruction is criticized because the words "negligently and carelessly" were used conjunctively; i. e., the jury was required to believe before it could find for Dr. Steele that the actions of the defendants must be "negligently and carelessly" done. These words ordinarily are synonymous, and we are unable to conceive that their use in the instruction was calculated to mislead the jury to the prejudice of the defendants. It does not appear that they requested the court to define either or both of these terms, or did more than formally object to the instruction as a whole. If they were convinced at the time that it was proper to protect their interests for these terms to be defined by the instruction to the jury, it was their duty to offer such instruction. The court is not required to give an instruction of his own motion in a civil case. Asher v. Metcalf et al., 152 Ky. 632, 153 S. W. 987. The failure to define a term used in the instructions, without request, is not error. Murphy et al. v. Hagan et al., 163 Ky. 407, 173 S. W. 1146; Otte et al. v. Guilford et al., 209 Ky. 33, 272 S. W. 41; Deer Creek Mining Co. v. Moore, 200 Ky. 553, 255 S. W. 123. If the appellant desired a definition of "negligently and carelessly" or of a comparison and distinction between the two words, they should have offered an instruction containing such definition. Not having offered such an instruction, they cannot complain of the use of the words, or of the fact that the instruction was not given as explicit or comprehensive as it should have been. Sales v. Martin, 173 Ky. 616, 191 S. W. 480, and cases cited.

Instruction No. 2 advised the jury of its duty respecting assumed risk. The appellant offered an instruction presenting the same theory in different phraseology, and, if the court erred in giving to the jury instruction No. 2, the instruction offered by appellant being substantially the same as that given by the court, they are in no attitude now to complain of the act of the court in giving instruction No. 2 to the jury. The rule is universally accepted that a party cannot complain of an instruction given by the court containing the same vice as the one offered by him. Moise v. Burton, 197 Ky. 538, 247 S. W. 744. It is vigorously argued

that the court erred in failing to give to the jury an instruction on contributory negligence. The defendants did not offer or request an instruction on contributory negligence, and it was not the duty of the court to give an instruction on this issue, unless requested by the defendants, and not then unless the evidence authorized it to be given. Cincinnati, N. O. & T. P. Ry. Co.'s Receiver v. Curd, 60 S. W. 297, 22 Ky. Law Rep. 1222; Cincinnati, N. O. & T. P. Ry. Co. v. Richardson, 14 Ky. Law Rep. 367; Deer Creek Mining Co. v. Moore, supra.

An examination of the evidence convinces us that it was not shown that Dr. Steele was guilty of negligence that in any way contributed to the cause of the accident which produced his injury. "Contributory negligence" means an act or omission amounting to want of ordinary care on the part of the plaintiff, which, concurring with the negligence of the defendant, is the proximate cause of the injury. Chesapeake & O. Ry. Co. v. Conley, 136 Ky. 601, 124 S. W. 861. The only evidence tending to show contributory negligence on the part of Dr. Steele, as this term is defined in the case supra, is his act in going upon the culvert. In the circumstances, his act in so doing was not per se negligence. It was not his going upon the culvert that produced his injuries, but it was the unsafe condition of planks out of which it was constructed and of which condition he had no notice or knowledge at the time of his going upon it. City of Covington v. Diehl, 59 S. W. 492, 22 Ky. Law Rep. 955. The appellants are in no position to complain of the court's failure to give the instruction on contributory negligence, (1) because they did not request it, and (2) because there is no evidence tending to show contributory negligence on the part of Dr. Steele. The complaint against instruction No. 1, which authorized the jury to fix damages for permanent injury to Dr. Steele, is based upon the absence of evidence showing that his injuries were permanent. The verdict fixed his injury at $500, and, considering the injury sustained by him, it is plain that the jury only awarded him compensatory damages for his mental and physical injury other than permanent injury, and the giving of the instruction authorizing the jury to find that he was permanently injured and to fix damages therefor, while perhaps not authorized by the evidence, was not so prejudicial as to warrant a re-

versal ·of the case. An error in instructions is not grounds for reversal unless it affirmatively appears that it was prejudicial. Cincinnati, N. O. & T. P. Ry. Co. v. Gardner, 165 Ky. 48, 176 S. W. 351; Warren v. Cumberland R. Co., 175 Ky. 92, 193 S. W. 1037; Seaboard Oil Co. v. Britt, 208 Ky. 723, 271 S. W. 1038. It has been the universal rule of this court, of long standing, enunciated in many cases, that a case will not be reversed for an erroneous instruction, not prejudicial. It being so apparent in the present case that the jury did not award by its verdict damage for permanent injury, it is our conclusion that no error to the substantial rights of the defendants was committed by the trial court in the giving of the instruction authorizing damage therefor, even though the evidence did not authorize the giving of such an instruction.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.