## Conn's Adm'r v. Shields.

April 21, 1944.

J. A. Richards and James C. Clay for appellant.

Jouett & Metcalf, J. Ashlin Logan and G. C. Ewing for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Robert Conn was drowned in Licking River, probably on the night of March 17, 1942. His administrator has prosecuted an action for damages for his death against Paul R. Shields, doing business as the Shields Construction Company. The trial court directed a verdict for the defendant, and the plaintiff appeals.

Conn was a farmer and worker in timber, living in the vicinity of Cranston, in the northern part of Rowan County. On that day he had gone to Morehead with a load of cross ties. Between five and six o'clock in the afternoon he appeared near Midland, in Bath County, on U. S. Highway No. 60, a mile or so east of the river, which is the boundary between Rowan and Bath Counties, and had a conversation with one Fraley, whom he mistook for another man, with regard to having him haul some cross ties. He next appeared between eight and nine o'clock at the store of Mrs. Mynhier, a few hundred yards west of Fraley's house. He stayed there about a half hour, during which he inquired how far it was to the North Fork on or near which was his home, fifteen or twenty miles away. He was a stranger at both places and was identified by a description of his clothing. There is no evidence as to whether the man was walking or riding and none that he was intoxicated in any degree. Two or three weeks later Conn's body was found down the river, having been in the water apparently for some time.

The defendant was engaged in building a bridge over Licking River on U. S. Highway No. 60. A new approach on the west or Bath County side, leaving the old road 200 or 300 feet back, had been graded by another contractor. Except when wet and muddy the dirt

on the fill or grade was hard and was used by vehicles and pedestrians to reach a saloon which stood on the side of the new approach and by workmen and sight-seers. As we understand, this building was about half way between the point where the new road left the old and the end of the bridge under construction. On the night of March 17th there was a bright Neon light in front of this place. There is no evidence that Conn ever entered it. The steel girders had been placed on the new bridge abutments and piers all the way across. Loose flooring covered them for about forty feet, which was perhaps half way across. There was no barrier or light where the new grade began or at the bridge approach, or at the end of the temporary flooring. But one walking on the new grade had to step up on the concrete abutment to get upon the floor. According to the plaintiff's evidence this step was from 12 to 15 inches high. According to the defendant's evidence it was 24 to 34 inches.

The theory of the plaintiff is that Conn, a stranger, was misled into taking the new road, especially being guided by the light of the saloon on it, and that he had started across the bridge without knowing that the flooring ended in the middle of it, so that he walked off or fell into the river and was drowned. At that time it was swollen from recent rain. Supporting this theory is the testimony of Price, who was guarding a railroad bridge 300 or 400 feet down the stream, that about half past nine o'clock he heard a splash in the stream from that direction and the cry of "Oh! Oh!" or something of the kind. His wife, who happened to be with him, gave the same testimony. The bridge of the old highway, which was being used by the traveling public, was about midway between the railroad and the new bridge.

The appellant contends there was negligence on the part of the defendant in failing to maintain a guard or barricade or a light at the bridge in order to give warning to the unsuspecting public of the danger of using the new road and the uncompleted bridge; that there was an implied invitation to the deceased and others to use the approach and bridge, especially as it was shown that there was a public place of business maintained on the new road. 38 Am. Jur., Negligence, Secs. 96, 98; Taylor v. Westerfield, 233 Ky. 619, 26 S. W. (2d) 577, 69 A. L. R. 482; Louisville & N. R. Co. v. Snow's Adm'r, 235 Ky.

·211, 30 S. W. (2d) 885; Codell Construction Co. v. Steele, 247 Ky. 173, 56 S. W. (2d) 955. Without any degree of acquiescence, let it be conceded for the argument that negligence was shown. But negligence is not a tort unless it results in the commission of a wrong or in harm to some one. Proof of a wrong or damage as the result is as essential as proof of negligence. One who seeks redress at law does not make out a cause of action by merely proving the defendant to have been negligent. Injury as a proximate result must be proved.

We find no evidence that the deceased was drowned because of the negligence of the defendant. How, when or where Conn got into the river is left entirely to conjecture. He was not shown to have been closer than a mile and a half to the river. The splash in the water and the groan or call of a man may have been or may not have been by Conn. It may have been under or near the old bridge, over which the defendant exercised no control. It seems to us the case is clearly within the elementary rule that recovery cannot be had upon mere surmise that death or injury was caused by the defendant's negligence. The plaintiff failed to meet the burden of proof that Conn's death was the proximate result of the defendant's negligence; hence the court properly directed a verdict. Park Circuit & Realty Company v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106; Dalton v. Steiden Stores, 277 Ky. 179, 126 S. W. (2d) 155.

The judgment is affirmed.