## Moore v. Decker.

January 24, 1950.

K. S. Alcorn, Judge.

Davis, Boehl, Viser & Marcus and C. E. Rankin for appellant.

James F. Clay for appellee.

Chief Justice Sims—Reversing.

This appeal is from a judgment of $500 entered on a verdict returned in the second trial of an automobile accident case. The first trial resulted in the jury finding both plaintiff, Frank S. Decker, and defendant, Mrs. Anna Parks Moore, negligent in the operation of their automobiles, and recovery was refused plaintiff on his petition and defendant on her counterclaim for the damages done their respective cars by the collision. Defendant excepted to the order granting plaintiff a new trial and within the time given filed her bill of exceptions. When the verdict for $500 was returned against defendant on the second trial, she promptly filed motion for a new trial and moved the court to substitute the verdict on the first trial for the one returned on the second and asked that judgment be entered on the first verdict. Both motions were overruled and she appeals.

The sole question before us is whether the court abused his discretion in granting a new trial. It is contended by plaintiff that the court's instructions on the first trial were erroneous, for which reason the judge properly granted the new trial. Defendant insists that the instructions on the first trial were correct; but if

they were erroneous, plaintiff invited the error and cannot complain of it.

The accident happened in midafternoon on June 6, 1947, on highway No. 33. It had been raining and the 18 foot, black-top highway was slippery. Plaintiff was driving north at the rate of 25 or 30 miles per hour and defendant's car, driven by her sixteen year old son, Clay, was slowly emerging from her private driveway on the west side of the highway and turning north into the highway when the two cars collided. The occupants of the cars were not injured and plaintiff's petition and defendant's counterclaim sought to recover the damages done their respective cars.

There was a car some 250 feet in front of plaintiff which also was traveling north. It is not denied that Clay brought his mother's car to a stop at the mouth of the driveway and allowed the first car to pass. Plaintiff testified that when Clay stopped for the first car to pass he presumed Clay would not start again until plaintiff's car passed the entrance to the driveway. However, when the first car had gotten by, Clay started his mother's car very slowly and proceeded to enter the highway at an angle with the car turning north. Neither Clay, his mother nor father, who were riding on the front seat with him, saw plaintiff's car approaching from the south, although their view was unobstructed for 500 or 600 feet on the highway in the southern direction from which plaintiff was approaching.

Plaintiff testified that when Clay pulled out into the highway, 200 to 250 feet in front of him, he blew his horn, whereupon Clay came to a dead stop with his car angling across the highway. Plaintiff says he applied his brakes but the highway being wet and slippery, they did not hold, and he attempted to go around defendant's car by turning to his left, and struck the left rear fender of her car with the right front of his car. Plaintiff further testified he was driving on the east (his right) side of the highway, and as the front of defendant's car was beyond the middle of the highway, he could not pass it on the east side, therefore, he turned to his left in an attempt to pass it on the west (his left) side of the road.

The testimony of defendant, her son and husband,

was to the effect her car never reached the center of the highway and its back wheels were in the driveway at the time of the accident and there was sufficient space on the highway for plaintiff to pass to the right, or east, of her car. They further testified that plaintiff was driving on the west (his left) side of the highway and that he was only 75 feet away when he sounded his horn.

Plaintiff offered instruction "A" which after setting out certain duties of defendant's driver imposed this one on him: "To bring his automobile to a dead stop before entering the Danville & Shakertown Highway, Highway No. 33, from the private driveway and not to proceed into the Danville & Shakertown Highway, No. 33, until he could do so with reasonable safety to northbound and southbound traffic on Highway No. 33."

The Court refused to give this part of the offered instruction but in lieu thereof told the jury: "and it was his duty not to proceed from the private driveway into the Danville & Shakertown Highway if there was a car approaching on said highway, which he knew was approaching so near as to create a hazard, or which, by the exercise of ordinary care he could ascertain was approaching, and to yield the highway to such car."

It is insisted by plaintiff that the court erred in giving that part of instruction "A" last quoted above because it defines a driver's duty at an intersection as provided in KRS 189.330(4) which reads: "The driver of a vehicle shall stop at the entrances to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the highway as to constitute an immediate hazard, but the driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

Plaintiff argues the court should have instructed under KRS 189.330(6) which defines the duties of a driver of a vehicle about to enter a highway from a private driveway, which reads: "The driver of a vehicle about to enter or cross a highway from a private road or drive-

way shall yield the right of way to all vehicles approaching on the highway.''

We deem it unnecessary to determine whether the court instructed on the wrong subsection of KRS 189.-330, since a careful reading of the instruction offered by plaintiff and the one given by the court shows there is no material difference in them. Both impose practically the same duties on the driver with the exception that the offered instruction required defendant's driver to come to a dead stop before entering the highway. But this difference in the instructions is immaterial because all the testimony shows defendant's driver made a complete stop before emerging from the private driveway onto the highway.

One cannot complain of the giving of an instruction which is substantially like the one he offers. Pope-Caywood Lumber & Supply Co. v. Cleet, 236 Ky. 366, 33 S. W. 2d 360; Codell Construction Co. v. Steele, 247 Ky. 173, 56 S. W. 2d 955. Any error in the court's instruction which followed the one offered by plaintiff cannot be taken advantage of by him. Challinor v. Axton, 246 Ky. 76, 54 S. W. 2d 600. As was said in Collins' Adm'r v. C. & O. Ry. Co., 276 Ky. 659, 124 S. W. 2d 1039, one may not complain of an instruction containing the same vice as the one offered by him, as he invited the error of which he complains.

The court erred in setting aside the first verdict and granting plaintiff a new trial, therefore he is directed to set aside the second verdict and the judgment entered thereon and reinstate the first verdict and enter a judgment in conformity with it.

The judgment is reversed.