## Murphy, et al. v. Hagan, et al.

(Decided March 9, 1915.)

### Appeal from Daviess Circuit Court.

1. Trial—When Objection to Comes too Late.—When parties enter their appearance to an action and knew that the case had been set down for trial, and go into trial without objection, and no continuance is sought, an objection that the trial was premature comes too late in this court.

2. Evidence—Introduction of Deed—Competency in Certain Case.— The introduction of a deed in evidence, though incompetent except for the purpose of showing that the defendants' mother claimed the land, held, not prejudicial where the court admonished the jury that it should be considered for that purpose only.

LOUIS I. IGLEHEART for appellants.

E. B. ANDERSON for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is a controversy over 26 acres of land situated on the boundary line of Henderson and Daviess counties. As tried out in the court below the issue was solely between the devisees of Missouri Cummins on the one side and the heirs of E. W. Murphy on the other.

The Cummins were in possession and the Murphys sued in ejectment to dispossess them. The title of each is based upon adverse possession. The suit commenced in the Daviess Circuit Court by the appellee Hagan against Mrs. Missouri Cummins. He sued to compel her to convey to him a certain tract of land, which included the 26 acres, according to a contract she had theretofore executed to him. The contract called for the conveyance of 100 acres, more or less, and described it by naming adjacent landowners. Her northern neighbor was designated as E. W. Murphy. The amount of the consideration was to be ascertained by survey and abstract of title, and the price was $28 per acre. The survey disclosed 122 acres in the boundary, but the abstract showed that she had no record title. Her father, John Bristow, purchased the land in 1864, and died intestate a short while afterwards. His heirs-at-law were three children, viz., Missouri E. Cummins, Bettie Porter and Fenwick Bristow. Mrs. Porter and Fenwick Bristow lived in St. Louis, but Mrs. Cummins continued to live on the farm, and, except the 26 acres referred to, it is admitted that she has been in possession ever since her father's death. She claims that her father gave her the land, and as evidence of the gift delivered to her the deed which Allen, his vendor, made to him. Unfortunately for her, this seems to be the only evidence she has of the transfer, although she asserts that her claim has been open, complete and continuous ever since 1864, and she says that her brother and sister in St. Louis, not only knew of this, but recognized her as the owner. Hagan made the St. Louis parties defendants, and proceeded against them by warning order, but they entered their appearance and each claimed an undivided one-third interest. Prior to the answer of the St. Louis heirs Hagan amended his petition and made the heirs of E. W. Murphy, deceased, parties defendant. He averred that the Murphys were casting a cloud on the title by setting up a claim to the 26 acres. In the meantime Mrs. Cummins died testate. She devised all the land to her three children, the appellees, Pearl and William Cummins, and Opal Windell.

Five infant children of a deceased son were made legatees, and each given $1. The devisees and legatees were made parties, but the legatees, that is, the five infant grandchildren, were never served with process or brought before the court. The issues being made up between the Cummins devisees and the St. Louis heirs, on September 13th an order was entered setting the case down for trial on the 18th.

In 1892, E. W. Murphy purchased 100 acres of land from John Weir. It is described by metes and bounds, but the deed shows that it is bounded by the Bristow (Cummins) land on the south. In other words, according to the deeds under which Murphy and Cummins hold, the lands of each bind on the other with a common boundary line. But, as contended by the Murphy heirs, this 26-acre tract of land in controversy lies between the tract purchased by Murphy and the tract purchased by John Bristow. With a common boundary line it is difficult to understand how vacant land could lie between.

On September 15, without moving to set aside the order of the 13th, fixing the date for trial, the heirs of Murphy entered their appearance and filed a joint answer and cross-petition against all the other parties, plaintiffs and defendants. On the 17th Hagan, the original plaintiff, entered his appearance to the Murphy cross-petition and controverted it of record. On the 18th, the day of trial, a consent order was entered controverting Murphy's cross-petition as against the "heirs" of Missouri E. Cummins. No steps were taken as to the St. Louis parties. The case proceeded to trial as between the Cummins and Murphys over the ownership of 26 acres. The Murphys made no objection to going into trial nor did they make any request for a continuance. Hagan objected to the trial "because all the necessary parties to this action were not before the court on this issue." Hagan's objection, no doubt, had reference to the St. Louis heirs, in as much as they had not been brought before the court on the Murphy cross-petition. His objection, however, was overruled, but on this appeal Hagan is not complaining of that or any other ruling of the court.

Under the pleadings the burden of proof was on the Murphys, because they admitted the Cummins were in possession, and had been for two years. The Murphys contended that the Cummins possession was wrongful

and without right.  The case was fought out on this line, and the jury found for the Cummins, and the Murphys appeal.

Their first complaint is that the trial was premature; that the St. Louis parties had not been brought before the court on the Murphy cross-petition; and the infant legatees were not parties to the action.  In considering this matter it should be remembered as between them that however diverse were the interests of the devisees, the legatees, and the St. Louis heirs, as to the Murphys, their interests were identical.  The legatees had no interest in the land and there is nothing in the record to indicate that they were necessary parties.  The St. Louis heirs were parties to the action, and the cross-petition of the Murphys did little, if anything, more than join issue with the pleadings theretofore filed by the St. Louis heirs.  From the record, as we have it, any complaint as to the trial being premature would more properly come from the St. Louis heirs.  The Murphys have not been prejudiced by the fact that the St. Louis heirs did not formally deny or controvert the cross-petition.  More than this, the Murphys, when they entered their appearance, knew that the case had been set down for trial, and they proceeded with the trial without objection, and no continuance was sought.  It is now too late to raise the objection.  The recent case of Rosenberg v. Dahl, 162 Ky., 92, had under consideration a question very similar to this, where a part only of the defendants were before the court.  In discussing the provisions of Section 363 of the Civil Code, where it is provided that in an ordinary action the plaintiff can only demand a trial at any term as to part of the defendants upon his dismissing his action on the first day of the term as to the others, it was held that if a party waived his right to claim the benefit of this code provision by failing to object to the trial in seasonable time, he cannot thereafter avail himself of the right, either in the trial court or in this court.  As stated in that case:

"We may well assume that capable and experienced counsel for appellant were not averse to going into trial at the time the case was called without either asking for a continuance or moving that the plaintiff discontinue his action as to the defendants not summoned."

It is next insisted that the court misinstructed the jury.  Only one instruction was given, and that submitted

to the jury in plain terms the question as to the ownership of the 26 acres; that is, the jury were told to find whether the 26 acres belonged to the Murphys or the Cummins.

Appellant says the court should have further told the jury that if they found either party was the owner of any quantity of the land less than 26 acres, they should find for such party to that extent, and the case of Frye v. McKinley, 136 Ky., 31, is relied upon. In that case a familiar and unquestioned rule of law was thus stated:

"In ejectment the jury should be instructed that if they find for plaintiff the whole of the land in contest, they should so say in their verdict; but if they find for only a part of the land in contest, they should say what part."

We have examined the transcript carefully, and, in our opinion, the evidence does not demand such an instruction. The Murphys claimed to have had the whole 26 acres under fence from the time the land was purchased of Weir. The Cummins made the same claim. It is conceded by the Murphys that the Cummins built the first fence, and the Murphys built one parallel to it; in fact, they were interlocked, and each party claims that the 26 acres in controversy was on his side of that fence. Murphys claimed to have cleared up five acres of the land within the disputed boundary. The Cummins admit a clearing of five acres, but say it was within the conceded boundary of the Murphys and not within the 26 acres. If the Murphys were entitled to the five acres, they were as well entitled to the 26 acres. In fact, the only testimony on this proposition comes from William Cummins, and the Murphys claim that he concedes by his testimony that five acres of the 26 does belong to the Murphys. His testimony is as follows:

"Q. Do you know anything about this five acres of land he talked about having cleared up? A. If that has been cleared, it has been cleared lately, only the part Mr. Murphy spoke of, and that is on the part they bought there. That don't include the 26 acres at all. Q. The five acres they speak about clearing is in that corner? A. Yes, sir. Q. And that is a part of the 100 acres they got from Weir? A. Yes, sir."

While the testimony is not clear from the fact that the witness made reference to a map which is not in the record, yet we do not understand that he makes a concession of five acres of the 26. There is no other evi-

dence in the case to support the appellants' contention. Since the controversy was over the 26 acres, and if the parties did not own the whole of it, they owned none of it, we are of the opinion that the court properly submitted the question. The Murphys offered no other instruction, and hence cannot now complain at the court for not giving others, even if others would have been proper. Henry Clay Fire Ins. Co. v. Barkley, 160 Ky., 153; L. & N. R. R. Co. v. Simrall's Admr., 127 Ky., 55; Loughridge v. Ball, 118 S. W., 321; Burdett v. Mulin's Exrx., 110 S. W., 855.

Appellants complain that the court erroneously permitted the Cummins to introduce a deed and have it read in evidence. This was a deed which Missouri E. Cummins made and tendered to Hagan shortly before her death. The 122 acres was described in the deed and there was this recitation:

"It is the same tract of land which John Bristow gave to the party of the first part (Missouri E. Cummins) in the year 1864, and placed her (Missouri E. Cummins) in the possession of same, and which she (Missouri E. Cummins) has held adversely to every one continuously for more than 30 years past."

As against the Murphys, this deed was incompetent, except to the extent of showing that Missouri Cummins claimed the land as hers. The court specially admonished the jury, at the time, that this deed "may be considered with reference to the claim of this witness's mother (Missouri E. Cummins), but for no other purpose."

Perceiving no prejudicial error, the judgment of the lower court is affirmed. The issues between the Cummins and the St. Louis heirs are still open for adjudication in the court below.