## Davidson v. Ratliffe.

March 14, 1939.

S. M. Ward, Judge.

JESSE MORGAN and PAUL GROSS for appellant.

C. A. NOBLE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On the evening of November 1, 1935, the appellant, 'A'. S. Davidson, accompanied by three friends, was driving his automobile northwardly over state highway No. 15 through Perry county, Kentucky, en route to Hazard, when he struck and badly injured the appellee, Charley Ratliffe, a coal miner of advanced age, as he was at-

tempting to cross from the western side of the highway over to his son-in-law's home, situated on its eastern side.

Thereafter, in October, 1936, Ratliffe brought this action in the Perry circuit court against Davidson, seeking damages in the amount of $10,654 for his injuries suffered in this accident, claimed and alleged caused by defendant's negligent operation of his car in driving it on his left side of the highway, where plaintiff was walking when run over and injured by him, with the resulting impairment of his power to earn money and his loss of time from work.

Defendant's answer traversed the allegation of negligent driving and pleaded contributory negligence on the part of plaintiff as the proximate cause of his injury.

Plaintiff's reply, denying the plea, completed the issues.

Upon the cause being called for trial and the parties announcing ready, a jury was duly selected and sworn which, on hearing the evidence, the instructions of the court and argument of counsel, returned a verdict in favor of plaintiff in the amount of $1,000, on which, defendant's motion and grounds for a new trial having been overruled, judgment was accordingly entered.

Assailing this verdict and judgment thereon as erroneous, the defendant has prayed and been granted an appeal, which is now before us, wherein he seeks its reversal upon the following grounds: (1) That the court erred in overruling his motion for a directed verdict, made at the conclusion of the introduction of plaintiff's evidence and in again overruling his like motion made and renewed at the close of all the evidence; (2) misconduct of plaintiff's counsel "in persistently pursuing a line of interrogation of witnesses, which the court had ruled to be wrong," yet was continued for its prejudicial effect upon the jury; (3) improper argument of plaintiff's counsel, made to the jury, which served to arouse the passion and prejudice of the jury against appellant; (4) that the trial court erred in its instructions given the jury and particularly in respect to its instruction No. 1, which it is insisted was inapplicable to the proven facts and failed to present the theory of appellant's defense; and (5) that the evidence was in-

sufficient to support the jury's verdict and was flagrantly against the evidence and the instructions of the court.

Preliminary to our consideration and discussion of appellant's contentions urged with respect to this assignment of errors, alleged committed upon the trial, we deem it appropriate, as serving to clarify our later decision and disposition of them, to here give a brief summary of the facts and circumstances, as disclosed by the record, by which the opposing parties present their conflicting theories as to how and where this accident occurred and which, according to plaintiff's version as to its happening and cause, resulted from the defendant's negligence, upon which he predicated his alleged right to recover damages, as herein sued for.

The factual situation leading up to and out of which the happening of this unfortunate accident and resulting injury of this aged plaintiff arose, it appears without contradiction, is that the plaintiff was, at the time injured, an employee, some seventy-two years of age, of the Kenmont Coal Company, whose mining camp and entrance thereto was situated near this highway, a few miles south of Hazard; that plaintiff at the close of his day's work at the mine, at about dark, was leaving the mine for his home, made with his son-in-law and grandchildren, which was located some two hundred yards up the highway on its eastern side.

Further, it is shown that the plaintiff, when leaving for home, crossed over to the highway, to a point thereon about opposite the mine entrance, where he stopped at a Mr. Hall's store, there located, where he bought a "poke" of candy for his youngest grandchild and also there met his friend, Mr. Little, who invited him to ride in his car with him up the road to his home; that he accepted this invitation and stepped onto the right side running board of the car, where he stood as he rode up the highway as far as or to a point opposite his home, when Mr. Little stopped the car on his right side of the road; that plaintiff stepped off the running board, onto the gravelled shoulder, on his right or west side of the road, after which Mr. Little started up his car and had driven about fifteen or twenty feet, when he met and passed the defendant's car, approaching from the opposite direction, going northwardly towards Hazard.

From this point the evidence given respectively by plaintiff's and defendant's witnesses is highly conflict-

ing as to the facts and circumstances under which the defendant struck and injured the plaintiff as he was walking across the highway from its west side, where he had alighted from Mr. Little's car, over to his home, located on the opposite or its east side.

The testimony on this point for the plaintiff is that after stepping from the running board of Mr. Little's car onto the gravelled shoulder on the west side of the highway, he first stopped and looked to see if there were any cars approaching; that he had taken about two steps, from where he was standing, onto the "black top" or travelled portion of the highway, when he was suddenly hit by defendant's car. Further, he states that he was knocked unconscious when thus struck and did not know or remember any further circumstances of the accident until the next day, when he recovered consciousness in the hospital, to which he had been removed following his accident.

It is further testified by Mr. Little that just after he had let plaintiff alight from the running board of his car, to cross over the road to his home, and when he had driven a distance of only some fifteen or twenty feet, he met and passed the defendant's car as it was being driven northwardly on the opposite side of the road, with its headlights burning. He states that fearing lest some hurt or injury might befall plaintiff as he crossed the highway, he looked back, when he saw the defendant's car was then being driven by defendant on his left side of the highway and was being turned back onto his right side of it; that upon discovering the plaintiff had been struck by the defendant's car, he stopped, got out of his car and went back to where he found him lying over on the east or defendant's right side of the road, unconscious, his head bleeding and seemingly badly injured. Also, he states that defendant stopped and parked his car on his right side of the road, some fifteen or twenty feet beyond the point where plaintiff was lying in the road, when he and his three companions with whom he was driving came back to render aid.

Further, the witness states that he at this time called plaintiff's son-in-law from his home, on the east side of the road, and that he came out and assisted in putting plaintiff into the defendant's car, when they carried him to the hospital.

The son-in-law, Chalmer Henry, testifies that when

he was in defendant's car, when on the way to the hospital with the defendant and his three friends and his father, he smelled whiskey, but he did not state that anyone, or that the defendant, was then drinking or intoxicated.

He further testifies that there was found on the plaintiff, after he was struck, the bag of candy he had just previously, as stated, bought at the Hall store, in which there was left but a piece or two; that upon examining the highway where this accident occurred the next morning, he found pieces of candy scattered along the road where plaintiff had been struck.

Also, the plaintiff's son, Elmer Ratliffe, testifies that he returned early the next morning, about five o'clock, from the hospital to the scene of the accident, and that upon being shown where it had occurred, he inspected the highway, when he found blood stains extending from on the west or defendant's left side of the highway, or west of its medial line, to its east side; also, that he found at the place where he was told the defendant had parked his car, after hitting his father, a pint bottle of whiskey, from which about three inches of whiskey had been drunk.

The court sustained objections to this testimony of witness as to the whiskey bottle claimed found by him between five and five-thirty o'clock of the morning of November 2.

On the other hand, the testimony of the defendant, Davidson, and his three companions, riding with him at the time the accident occurred, is all to the one and same effect; that defendant was upon this occasion driving his car on his right or the east side of the road northwardly towards Hazard, with his car lights burning, when the plaintiff suddenly stepped out from behind Little's car and crossed over the medial line of the highway into the path of his car and that he was, when his presence there was first discovered by defendant, only six to ten feet from the front of his car; that defendant was at the time driving his car at the reasonable rate of some twenty to twenty-five miles an hour, but, when confronted with this sudden emergency, created by the plaintiff's appearing, as stated, immediately in front of his car, that in an effort to avoid striking him, the defendant swerved his car to his left, in an attempt to pass around and behind the plaintiff; that he failed to

entirely go behind him and struck him with the right end of the bumper of his car and that plaintiff fell back over his car and dropped therefrom to the road.

Both the defendant and his three witnesses testify that after discovering plaintiff's position over on their right side of the road, when so close to defendant's car, there was nothing the defendant could do other than he did do, with the means at his command, in his effort to avoid striking plaintiff.

However, one of the defendant's witnesses, Joe Couch, when testifying for the defendant, after stating that "this old man (plaintiff) stepped out from behind his (Little's) car and was crossing the road when Ad's car hit him," and that Davidson's car was some eight or ten feet away when plaintiff stepped from behind the other car, was further asked:

"Q. What was there to keep Mr. Davidson from seeing him when he first appeared from behind the car? A. Nothing; he seen him I reckon.

"Q. He had lights on his car and if he had been looking he could have seen him from those lights? A. Sure.

"Q. But he didn't see him until he got within eight or ten feet of him and Mr. Ratliffe coming crossing that highway? A. He saw him but didn't see him in time to stop."

In view of such being the evidence upon the issue of where the plaintiff was upon the highway when struck, the court gave the following instruction, No. 1, to the jury:

"It was the duty of the defendant, A. S. Davidson, at the time and upon the occasion mentioned in the evidence to drive and operate his car in a careful manner, with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon the highway, and it was his duty to travel to the right of the center of the highway, and it was his duty, after he discovered the danger in which the plaintiff was placed, to use every means at his command to avoid striking or injuring plaintiff.

"Now, if you shall believe from the evidence that at the time and upon the occasion mentioned

in the evidence the plaintiff was struck and injured as a direct and proximate result of a failure on the part of the defendant to observe and perform any one or more of the duties required of him and set out above, then you will find for the plaintiff as against the defendant such a sum in damages as you believe from the evidence will fairly and justly compensate the plaintiff * * * and if you find for the plaintiff your finding in all shall not exceed the sum of $10,654.00.''

By its instruction No. 2, the jury was told in substance that it was the duty of plaintiff, upon the occasion in evidence, before attempting to cross the highway, to look in both directions to see if a car was approaching and to use ''ordinary care; that is, the care which an ordinarily prudent man of like age and experience would use under like or similar circumstances, for his own protection and his own safety.''

By instruction No. 3, the jury was told that if it believed from the evidence that the injury to plaintiff directly and proximately resulted from ''a sudden appearance by the plaintiff in front of the car of the defendant in such a way and manner as that the defendant could not by the use of his best judgment avoid striking and injuring the plaintiff,'' it would find for the defendant.

The jury, under these instructions given it upon the pleadings and the evidence heard, has returned a verdict in favor of the plaintiff in the sum of $1,000, upon which judgment has been entered. A reversal of this judgment is here sought upon the grounds stated supra, the first of which is that the defendant was entitled upon this evidence to a directed verdict, as well as that it was flagrantly against the evidence. As to this, defendant contends that the evidence shows that plaintiff's injury may have resulted from either of two or more causes, as stated by the trial court in overruling defendant's motion for a directed verdict. Louisville Gas Company v. Kaufman, Straus & Co., 105 Ky. 131, 156, 48 S. W. 434, 20 Ky. Law Rep. 1069. Also, that the undisputed circumstances, here in evidence, and told by plaintiff's witnesses upon material issues, could not by any possibility be true, and that their testimony was inherently impossible, as the rule was announced in Louisville & Nashville Railroad Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471.

By reason of such contentions urged, we have deemed it needful to here make a rather extended and detailed statement of the evidence, the sufficiency of which is thus attacked, as constituting sufficient answer as to its inherent impossibility, and which is appraised by the appellant as constituting substantially no evidence.

We find ourselves unable to concur in the defendant's conclusion as to this, in view of plaintiff's positive statement that he was on his side of the road when struck by defendant's car as he had moved but two steps onto the highway away from its west side shoulder, on which he had alighted or stepped from Little's car, which was on his right side of the road. Little, too, testifies that, after driving only some fifteen or twenty feet beyond the point where he had stopped beside the road to let off the plaintiff and knowing that plaintiff was about to cross over the road, upon meeting and passing the defendant's car, he became anxious as to whether or not the plaintiff was safely crossing the road and looked back, when he saw that the defendant was then driving on his left or on the plaintiff's side of the road and was turning his car back onto his right side of it; or, in other words, that the defendant was driving on the west side of the road, where the plaintiff testifies he was driving when he there struck and injured him.

Certainly, the testimony of these two eye-witnesses of the accident was substantial evidence as to the circumstances of its occurrence.

Also, as tending to support their testimony is the further testimony of plaintiff's son-in-law and son as to the physical conditions found by them the next morning at the place of the accident, as to which they state that they found candy strewn along from where the plaintiff was struck by the car down the road to a point where his body was found lying on the defendant's right side of the road. His son also states that the candy was scattered in diagonal line from where his father was struck, as pointed out to him, across the medial line of the highway.

Of course, this evidence was contradicted by defendant's and his witnesses' statement that the plaintiff was not on his side or the left of the road when he suddenly appeared in front of defendant's car, but on defendant's side of the road, when, in attempting to

avoid hitting him the defendant did all within his power by swerving his car over to his left and trying to pass behind him.

There is thus presented by this conflicting evidence the pivotal question of what was the position of the plaintiff on the highway.

According to the plaintiff's evidence, the defendant was negligently driving his car on the wrong side of the road, and that such negligence was the cause of his injury, while the defendant's theory is that the plaintiff stepped immediately in front of his car, when he was driving on his right side of the road, and that, due to such contributory negligence of the plaintiff, or because of his sudden appearance just in front of him, the defendant was unable to avoid hitting and injuring him.

Upon this issue, the jury accepted and believed the testimony of plaintiff and his witnesses. That evidence being of the substantial character as above stated, we are unauthorized to disturb the jury's finding and, further, it was clearly evidence of such character as did not authorize the court to sustain the defendant's motion for a directed verdict.

Defendant further criticises the instructions given and particularly instruction No. 1, as set out above, contending that its unqualified statement that it was the duty of the defendant to drive on his right side of the road was here erroneous, in that it was inapplicable to the evidence given and to the theory of his defense, that he had the right to drive on his left side of the road when he did so, as he claimed, in the effort to avoid striking the plaintiff, who had himself created the emergency by stepping into the pathway of his car, making it necessary for him, in the exercise of his best judgment, to turn his car to the left to avoid striking him.

The language of this instruction No. 1, as given, follows practically the language of the statute, defining the duties of a driver in the operation of his car over the highways and enjoining that he should drive to his right where possible and also exercise ''due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway.''

It results, therefore, that instruction No. 1 as given, which substantially followed the language of the

statute, was not improper insofar as it went, even if it failed to give the whole law of the case. This being a civil action, the court was not required to give by its instructions the whole law of the case, but it is only required that the instructions given upon the court's own motion should, so far as given, correctly state the law.

Clearly, it was the appellant's duty, if of the opinion that a further instruction was called for in order to present his theory of the case—that is, that at the time of the accident he had the right to drive on the left side of the road to avoid striking the plaintiff—to have requested the giving of such an instruction or himself have offered one stating the law applicable to such case. Swann-Day Lbr. Co. v. Thomas, 129 Ky. 799, 112 S. W. 907; Murphy v. Hagan, 163 Ky. 407, 173 S. W. 1146; Chicago Panel Co. v. Jones, 143 Ky. 21, 135 S. W. 430; Asher v. Metcalf, 152 Ky. 632, 153 S. W. 987.

However, we find that the court, by its sudden appearance instruction, No. 3, did direct the jury in substance that if it believed from the evidence plaintiff's injury resulted from his sudden appearance in front of defendant's car, in such a way that he could not, when using his best judgment (here, according to the evidence, causing him to drive his car to the left of the road behind plaintiff) have avoided striking plaintiff, it would find for the defendant.

Without commenting as to the propriety of the form of this instruction, which was perhaps more favorable to the defendant than he was entitled to, it yet served to give him the advantage of his theory of defense and to excuse his driving to the left side of the road, if believed necessary to avoid striking plaintiff. Therefore, when considering this instruction with instruction No. 1, complained of, we are of the opinion the defendant was not prejudiced in the matter of the instructions given.

. Appellant's two remaining points or objections argued by him for reversal of the judgment, which we will consider together, relate to the alleged misconduct of plaintiff's counsel in improperly pursuing a line of interrogation of his witnesses which the court had ruled to be wrong and his improper reference made to such evidence, excluded by the court, in his final argument to the jury.

In considering these objections, it is to be remem-

bered that the court had overruled defendant's objection and permitted the plaintiff's witness, Chalmer Henry, to state whether or not the defendant was drunk or sober at the time of the accident, when the witness rode with him in his car as they were carrying the injured plaintiff therein to the hospital, and that witness stated that he smelled whiskey in the car; further that the court excluded as incompetent the evidence of another of plaintiff's witnesses, who undertook to testify in regard to finding, the next morning, a partly used bottle of whiskey, lying at the point he states he was told the defendant's car was parked the night before, when plaintiff was injured.

While not approving plaintiff's counsel's insistence in trying to get this excluded evidence before the jury, if he did so, offending counsel denies that such was his purpose in asking the question of the witness, after the court's ruling excluding it, but that his purpose was merely to present the matter in the record by avowal, made not in the hearing of the jury, so that a review as to the propriety of the court's ruling might be had.

Further, the charged misconduct of plaintiff's counsel, in respect to his improper argument made before the jury, refers to the following statement addressed the jury:

"Gentlemen of the Jury: The plaintiff has proven that whiskey was smelled in the automobile; the defendants say they were going to a dinner in Hazard; no doubt they were whetting up their appetites and hurrying to get their dinner."

An objection was made by counsel for defendant at the time this statement was made in argument of plaintiff's counsel, which the court overruled.

We are again unable to concur with defendant's contention that this constituted misconduct on the part of plaintiff's counsel of such prejudicial character as merits a reversal of the judgment.

The statement refers to the witness' smelling whiskey in the car the defendant was driving on the night of the accident. This testimony the court had permitted plaintiff's witness to give upon the trial and therefore we are not inclined to regard counsel's coupling it with the further statement, that as "defendants were going to a dinner in Hazard, no doubt they

were whetting up their appetites and hurrying to get their dinner," at the time defendant's car struck and injured the plaintiff, as gravely prejudicial, if at all, to defendant's rights.

Plaintiff's counsel, in this reference to witness' testimony as to smelling whiskey in the car, did not go outside of the record nor do we view his deduction, even if improperly made from such testimony, that the "defendants no doubt were whetting up their appetites and hurrying to get their dinner," constituted such impressive or prejudicial argument as to be a substantial ground for reversal of the judgment.

The trial court, we think, did not improperly overrule defendant's objection made to this argument, as it is difficult to see how the same could have had any substantial effect upon the jury or that it was calculated to inflame their minds or arouse their passion against the defendant.

Such being our conclusions in regard to the several assignments of error, as hereinabove considered and disposed of, we are led to conclude that the trial court's judgment should be, and it is, affirmed.